**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NICHOLAS KNOPICK, | : | |
| | : | Civ. No. 14-5639 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UBS FINANCIAL SERVICES, INC. and | : | |
| SUSAN SEIFERT, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS

Defendants, UBS Financial Services Inc. and Susan Seifert, submit this

memorandum of law in support of their motion to dismiss the complaint of Plaintiff, Nicholas

Knopick, pursuant to Fed.R.Civ.P. 12.

## I.      INTRODUCTION

On October 1, 2014 Plaintiff Nicholas Knopick commenced this action by filing a

54 page, 232-paragraph putative class action Complaint against UBS Financial Services Inc.

("UBS FS") and Susan Seifert ("Seifert") to recover over $11 million in alleged losses which he

claims were sustained in late 2008.  Knopick claims the losses resulted from unsuitable and

unauthorized trading in a Swiss investment account established and maintained at his request

with non-party UBS Swiss Financial Advisors ("UBS SFA") and margined through non-party

Swiss bank UBS AG.  Though Knopick also opened around the same time in early 2007 a much

smaller brokerage account with the Baltimore, Maryland office of UBS FS with Seifert serving

as his financial adviser, Plaintiff does not allege that any of the trading in his UBS FS account

was improper in any respect, and Knopick has not and cannot make any complaint about that

account.  Knopick has enjoyed substantial profits in his UBS FS brokerage account, and he continues to maintain the account with UBS FS and Seifert through the present date.  .

Rather, Knopick seeks to hold UBS FS and Seifert responsible for the substantial losses he claims to have incurred in the entirely separate financial account with non-parties UBS AG and UBS SFA in Switzerland.  Plaintiff does not contend that UBS FS or Seifert managed or otherwise exercised any control over this Swiss account.  They did not.  Knopick also does not contend that UBS FS or Seifert had any knowledge concerning the investments he chose to make in his Swiss accounts.  In fact, they did not and could not because of Swiss banking laws, and Knopick knew that when he opened the account.  Indeed, that was the point of Knopick requesting the off-shore account in the first instance.  Finally, although the Complaint is filled with fanciful allegations that  establishing accounts such as his was a necessary part of  a "massive tax fraud scheme" by the Swiss entities, Plaintiff does not allege that his investing was part of that scheme or that his account was otherwise illegal.  In fact, Knopick specifically alleges that *his* account was not illegal.  Nonetheless, Knopick seeks to hold UBS FS and Seifert vicariously responsible for his investment losses in Switzerland because they allegedly introduced him, at his request, to representatives of the Swiss entities.

UBS FS and Seifert now ask the Court to dismiss this action, both because the action belongs, if at all, in one of two other forums—the Southern District of New York or Switzerland—based on the agreements pled in the Complaint, or, alternatively, to transfer the action to the United States District Court for the Southern District of New York.  As to the domestic forum, UBS FS and Seifert rely upon the forum selection clause in the agreement Knopick signed at the time he opened his account with UBS FS in 2007.  The agreement expressly provides that New York law will apply to any dispute between the parties, and that the

parties have selected the New York state courts and the United States District Court for the Southern District of New York as the exclusive venues for any court litigation between them. Under applicable law, the Court should enforce the forum selection clause the parties mutually agreed to at the time Knopick opened his account with UBS FS. And to the extent that the gravamen of Plaintiff's claims is really a result of wrongdoing in Switzerland, Plaintiff's agreements with the Swiss entities subject those claims to a Swiss forum selection clause and they must be litigated in Switzerland.

Even if the Court, for whatever reason, does not enforce the forum selection clauses, the majority of Plaintiff's legal claims should be dismissed as a matter of law for failure to state claims upon which relief can be granted. Although Plaintiff's lengthy Complaint attempts to dress up his lawsuit in the trappings of fraud, racketeering, and class action, among other things, a careful examination of his claims reveals that they are entirely unsupported, speculative and deficient as a matter of law as they pertain to UBS FS and Seifert.

Plaintiff's claims for fraud, negligence, breach of fiduciary duty, and unjust enrichment are barred as a matter of law because New York courts will routinely dismiss tort claims which merely duplicate breach of contract claims. Plaintiff's negligence and negligent breach of fiduciary duty claims also are time-barred. The existence of a valid and enforceable contract between Plaintiff and UBS FS bars a claim for unjust enrichment under New York law. Plaintiff's claim under the New York General Business Law likewise fails because the alleged harm is not "consumer oriented" as that term has been defined by the New York courts. Plaintiff's RICO claims must also be dismissed because they seek to utilize alleged securities fraud as a "predicate act" in violation of the Private Securities Litigation Reform Act. Finally, Plaintiff's class action allegations must be stricken for several reasons, including the fact that the

proffered class is not ascertainable, Seifert had nothing to do with the putative class and Plaintiff

cannot satisfy the commonality and predominance requirements to support a class action here.

## II.     STATEMENT OF FACTS

According to the Complaint, Plaintiff established a brokerage relationship with

Seifert in the Baltimore, Maryland office of UBS FS in January 2007.  See Compl. ¶¶14, 15, 20.[1]

Knopick carefully explained his investment strategy to Seifert, and at all times Seifert faithfully

followed Knopick's investment instructions.  Id.  Knopick deposited several million dollars into

the account with UBS FS which he thereafter invested conservatively in blue chip common

stocks with high dividend yields, and used those dividends to make interest payments on margin

loans that he used, in part, to fund his securities purchases.  Compl. ¶20.

Knopick further claims that he has followed this investment strategy successfully

for years, and that his efforts have been "rewarded with significant earnings."  Id.  Nothing that

occurred in this US-domiciled account, and none of the services provided by UBS FS or Seifert,

is now or ever has been the subject of any complaint by Knopick.  In fact, Knopick continues to

invest his funds with the Baltimore office of UBS FS and Seifert through the current dates.

Compl. ¶14.

As part of this relationship, Plaintiff signed a "Client Information and Agreement

for Individuals" with UBS FS at the time he opened his brokerage account on January 19, 2007.

Compl. ¶41.  This agreement includes a "Master Account Agreement."  Copies of the

Agreements are attached as Exhibit "A" to the Complaint.  The Master Account Agreement

---

[1]    This Statement of Facts is taken from the Complaint and assumed to be true only for
       purposes of this motion to dismiss, as required by Rule 12.  Defendants do not otherwise
       concede the truth or accuracy of any of it.

provides that New York law will apply to any dispute between the parties, and that the parties have selected the New York state courts and the United States District Court for the Southern District of New York as the exclusive venues for any court litigation between them. Specifically, the agreement provides as follows:

> This Agreement, its enforcement and the relationship between you and UBS Financial Services **shall be governed by the laws of the State of New York**, including the arbitration provisions contained herein, without giving effect to the choice of law or conflict of laws provision thereof … in the event that the arbitration clause contained herein is found to be unenforceable,[2] **you and UBS Financial Services agree that they will, for purposes of determining all matters with regard to this Agreement, submit to the exclusive jurisdiction of the courts of the State of New York and the federal courts sitting in the Southern District of New York.** You also consent to service of process by certified mail to the Accounts Address of Record **and waive any *forum non conveniens* and venue claims.**

Id. at Exhibit "A", pg. 20 ("applicable law") (emphasis added).

In his initial call to UBS FS and Seifert, Knopick also inquired about opening, and thereafter opened based on an introduction by Seifert, a Swiss account with Andreas Knopfel, who Seifert identified as a "Swiss investment adviser with UBS SFA." Compl. ¶21. UBS SFA is a Swiss corporation with its principal place of business located in Zurich, Switzerland. UBS SFA is a wholly-owned subsidiary of UBS AG, which is also a foreign corporation. Compl. ¶¶16-17. Knopick signed agreements with UBS SFA on January 23, 2007 and April 3, 2007. Compl. ¶70; Exhibit "C." The Basic Document for Account/Custody Account Relationship contains the following choice of law and venue provisions:

---

2    The arbitration clause is not enforceable at this time, given the class action allegations contained in the Complaint.

> The present agreement and/or declaration shall be exclusively governed and construed in accordance with Swiss law … [T]he exclusive place of jurisdiction for any disputes arising out of and in connection with the present Agreement and/or declaration shall be Zurich, Switzerland. UBS reserves the right, however, to take legal action against the undersigned before the authority of his/her domicile or before any other competent authority, in which even exclusively Swiss law shall remain applicable.

Compl. ¶73.

Knopick also signed a client agreement with UBS AG on April 3, 2007. The agreement, entitled "Basic Document for Account/Custody Account Relationship" authorized UBS AG to make investments on Knopick's behalf. The agreement also provided that the agreement would be governed exclusively by and construed in accordance with Swiss law and that the exclusive place of jurisdiction for any disputes arising out of or in connection with the agreement would be Zurich, Switzerland. Compl. ¶54. After opening his Swiss accounts, Knopick funded the accounts with a wire transfer deposit in the amount of $12,445,483.47 from his Wachovia bank account in Pennsylvania to UBS AG in Switzerland. Compl. ¶22. The Complaint does not allege that UBS FS or Seifert had any role in opening or funding the account. Rather, once Knopick was introduced to UBS SFA, all further business dealings relating to the Swiss account were handled directly between Knopick and the Swiss parties (non-parties to this action) and controlled by his agreements with those parties. See, e.g., Compl. ¶¶152-153.

Knopick alleges that he carefully explained his investment strategy to Knopfel. Compl. ¶22. According to the Complaint, Knopfel ignored his investment instructions "and invested Mr. Knopick's money wildly, trading his dollars in foreign currencies and purchasing an inexplicable collection of stocks and bonds denominated in those foreign currencies." Compl. ¶29. Knopick further alleges that he never authorized Knopfel to purchase bonds for Knopick's account, or to invest contrary to "Mr. Knopick's time-proving strategy." Compl. ¶29.

- 6 -

The Complaint claims that Knopfel and his assistant told Knopick in telephone calls from Switzerland to Pennsylvania and elsewhere in the United States that his investments were performing well, and concealed from Knopick that his money had been invested against his instructions, that his account was excessively leveraged with loans from USB AG secured by his UBS SFA investments, that UBS AG and UBS SFA "were under investigation for a massive tax evasion scheme in the U.S. and that his account had been created as a cover for that scheme." Compl. ¶30. Knopick also concedes, however, in his Complaint that he received statements for his Swiss account during that time that he maintained the Swiss account. Compl, ¶26.

Knopick further alleges that in September 2008 UBS SFA contacted him to inform him that his portfolio might need to be liquidated to pay the UBS AG margin loans in his Swiss account. According to the Complaint, Knopfel "had leveraged Mr. Knopick's UBS SFA account to purchase volatile securities, and had purchased bonds that paid interest rates at a rate that was lower than the interest rate on the margin loans," Compl. ¶31, that as debt and equity markets "melted down" in late 2008, UBS SFA "continued to liquidate Mr. Knopick's portfolio at fire sale prices to satisfy UBS AG's loan repayment requirements," Compl. ¶34, and that Knopfel was subsequently removed from his job and replaced by Renee Elste. Compl. ¶32.

Finally, Knopick alleges that UBS SFA and Elste "dissuaded [him] from withdrawing his money promptly, ostensibly to feed UBS AG's appetite for the loan repayments." Compl. ¶34. Purportedly as a result, Knopick's $12,000,000 investment was reduced to approximately $900,000. Compl. ¶34.

Once again, the Complaint does not allege that UBS FS or Seifert had any knowledge of any of this or any of the investment activity relating to his Swiss account. Nor does Knopick contend that any of the losses he sustained occurred at UBS FS. He does not

allege that UBS FS or Seifert had any involvement in the trading in his Swiss accounts or that they even had any knowledge concerning the investments he maintained in his Swiss accounts. Although his Complaint is replete with references to "a massive tax fraud scheme" purportedly orchestrated by Swiss entities, nowhere does Knopick allege that the investments he made in Switzerland were part of any such tax fraud scheme or otherwise illegal, or that UBS FS or Seifert had any knowledge of the alleged tax fraud or illegality, and he does not allege how the alleged illegality had any causal connection to his alleged losses, as he claims that his account was not illegal.

Knopick commenced this action by filing a putative Class Action Complaint on October 1, 2014. On October 2, 2014, Knopick filed a similar Class Action Complaint against Defendants UBS AG, UBS Swiss Financial Advisors, Inc. and Renee Elste in the Court of Common Pleas, Dauphin County, Pennsylvania. The Dauphin County action was subsequently removed to the United States District Court for the Middle District of Pennsylvania on October 30, 2014 and is presently pending before the Honorable Yvette Kane as Civil Action No. 1:14-cv-02090-YK.

## III.    <u>ARGUMENT</u>

Plaintiff's complaint must be dismissed in its entirety. *First*, and most fundamentally, this case belongs in the Southern District of New York, pursuant to the contractual venue provision agreed upon by the parties, or in Switzerland. *Second*, even if the Court were to rule the venue provision does not prevent this Court from proceeding with this case, most of Plaintiff's claims fail as a matter of law.

## A. The complaint should be dismissed based on the forum selection clause in the parties' contract, which commands venue in New York.

Plaintiff's complaint should be dismissed under Rule 12(b)(6) because the parties selected the New York courts as the exclusive fora for resolution of this dispute.[3] As the Complaint plainly concedes, the matters and relationships at issue in this action are governed by agreements among the parties. <u>See</u> Compl. at Exhibits A, B, and C. The agreement between the parties contains the following forum selection clause:

> [Y]ou and UBS Financial Services agree that they will, for purposes of determining ***all matters*** with regard to this Agreement, submit to the ***exclusive jurisdiction*** of the courts of the State of New York ***and the federal courts sitting in the Southern District of New York***.

Compl. (ECF doc. no. 1) at Exhibit A, p. 20 ("Applicable Law") (emphasis added). This provision is unambiguous and clearly expresses the intentions of the parties. Accordingly, dismissal is required.

The law of the Third Circuit[4] holds that "[f]orum selection clauses are entitled to great weight, and are presumptively valid." <u>DePuy Synthes Sales, Inc. v. Edwards</u>, ___ F. Supp. 2d ___, 2014 WL 1976957, *3-*4 (E.D. Pa. 2014) (Yohn, J.) (enforcing parties' contractual forum selection clause). A contractual forum selection clause "represents the parties' agreement

---

[3] There is no question that this Court may dismiss this action under Rule 12(b)(6) based on the parties' forum selection clause. <u>See</u> <u>Jordan v. SEI Corp</u>, 1996 WL 296540 (E.D. Pa. 1996) (Yohn, J.) (dismissing case under 12(b)(6), based on forum selection clause); <u>Wolfe v. TBG Ltd.</u>, 2014 WL 325637, *1 (E.D. Pa. 2014) (the Third Circuit "has held that dismissal under Rule 12(b)(6) is also proper where a forum selection clause designates another court as the exclusive venue for litigation." (citation omitted)).

[4] Federal law determines the effect of the forum selection clause, because the question is procedural, not substantive, in nature. <u>See</u> <u>Wall Street Aubrey Golf, LLC v. Aubrey</u>, 189 Fed. Appx. 82, 84 (3d Cir. 2006).

as to the most proper forum[, and] the enforcement of valid forum selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." Id. (quoting Atl. Marine Constr. Co. v. U.S. Dist. Court, 134 S. Ct. 568, 581 (2013)). Thus, "where [a] forum selection clause is valid … [the party seeking to depart from it] bears the burden of demonstrating why they should not be bound by their contractual choice of forum." Id. (quoting Jumara v. State Farm Ins. Co., 55 F.3d 873, 880 (3d Cir. 1995)). "Forum selection clauses are 'prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances.'" Id. (quoting Foster v. Chesapeake Ins. Co., 933 F.2d 1207, 1219 (3d Cir. 1991)); see also PGT Trucking, Inc. v. Lyman Consulting, LLC, 500 F. Appx. 202, 204 (3d Cir. 2012) ("Forum selection clauses are entitled to great weight, and are presumptively valid.")

Here, there is no question that the parties' forum selection clause is valid, and that it applies. Indeed, Plaintiff has specifically pleaded the validity of the agreement containing that clause, both in general and as a basis for his breach of contract claim. See Compl. at ¶¶41, 174. The clause is not unreasonable, as Plaintiff neither alleges, nor could possibly show, that appearing in the Southern District of New York (a short train ride from Philadelphia, where he voluntarily filed suit) would effectively deny him his day in court. A "forum selection clause is unreasonable where the defendant can make a strong showing either that the forum thus selected is 'so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court' or that the clause was procured through 'fraud or overreaching.'" Id. (quoting Foster). Plaintiff also does not allege, nor could he possibly demonstrate, that the clause was procured through "fraud or overreaching." See, e.g., MoneyGram Payment Sys. v. Consorcio Oriental, S.A., 65 F. App'x 844, 848 (3d Cir. 2003) (citing Prima Paint Corp. v. Flood & Conklin

Mfg. Co., 388 U.S. 395 (1967)); accord, e.g., Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n.14 (1974) (forum selection clause is unenforceable only "if the *inclusion of that clause in the contract* was the product of fraud or coercion").

The language of the forum selection clause also plainly covers all claims in this dispute. The parties' relationship is founded on the agreement between them, and the forum selection clause broadly covers "***all matters*** with regard to this Agreement." This language captures all of the various claims asserted by Plaintiff, which all regard, in some way, the agreement between Plaintiff and Defendants. See TriState HVAC Equipment, LLP v. Big Belly Solar, Inc., 752 F. Supp. 2d 517, 536-37 (E.D. Pa. 2010) (Yohn, J.) (holding all of Plaintiff's claims were subject to contract's forum selection clause, including tort claims, which were brought in tandem with a breach of contract claim); Crescent Int'l, Inc. v. Avatar Communities, Inc., 857 F.2d 943, 944-45 (3d Cir. 1988) (holding forum selection clause covered additional claims for RICO violation, fraud, unfair competition and tortious interference; court held that "pleading alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms."); Oak Systems, Inc. v. Francotyp-Postalia, Inc., 2002 WL 442104, *2 (E.D. Pa. 2002) ("broad, unconditional forum selection clauses which mandate jurisdiction in a specific forum, like the one at bar, apply to all claims, whether they be based in tort or contract, and shall be enforced"). Accordingly, the forum selection clause plainly applies, and mandates dismissal.

Any responsive argument by Plaintiff that his claims do not relate to his agreement with UBS FS, but, rather, to his Swiss investments and the agreements relating to that relationship will not preclude the dismissal of his action in this forum. See Compl. at Exhibits B

and C.  In fact, it would require dismissal under the Swiss forum selection clause applicable to those relationships.

Plaintiff's agreements with the Swiss entities contain the following forum selection clause:

> [T]he ***exclusive place of jurisdiction*** for any disputes arising out of and in connection with the present Agreement and/or Declaration ***shall be Zurich, Switzerland***.

Compl. at Exhibit B and ¶¶54, 59, 73 (emphasis added); see Jordan v. SEI Corp, 1996 WL 296540 (E.D. Pa. 1996) (Yohn, J.) (dismissing case under Rule 12(b)(6), based on forum selection clause that required dispute to be litigated in Zurich, Switzerland).[5]  Accordingly, regardless of whether Plaintiff's claims arise out of the agreements with UBS FS, with the Swiss parties, or both, dismissal of all claims in this District is still required.  None of the agreements provide for venue here, in the Eastern District of Pennsylvania.[6]  Dismissal, therefore, is appropriate.

---

[5]  The forum selection analysis does not change merely because an agreement's forum selection clause specifies a foreign country as the jurisdiction to litigate claims.  See, e.g., Hodes v. S.N.C. Achile Lauro ed Altri-Gestione, 858 F.2d 905, 916 (3d Cir. 1988) (enforcing forum selection clause mandating litigation in Italy); Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 204 (3d Cir. 1983) (enforcing forum selection clause mandating litigation in England).

[6]  Further underscoring the lack of any connection between this matter and the Eastern District of Pennsylvania is the fact that Plaintiff has no personal connection with this District.  Plaintiff's only claimed residence is in the Middle District of Pennsylvania, and while he alleges in paragraph 13 of his complaint that he maintained a Pennsylvania residence at some prior point in time, Plaintiff claims he is a citizen of Arkansas in other federal pleadings.  See Complaint at ¶3, filed Feb. 7, 2011 (doc. no. 1), Knopick v. Breedlove, W.D. Ark., Civ. No. 11-3010; Complaint at ¶3, filed July 6, 2009 (doc. No. 1), Knopick v. Connelly, M.D. Pa., Civ. No. 09-1287.  Additionally, Plaintiff's account with UBS FS and Seifert is domiciled at the Baltimore branch of UBS.  Put simply, Plaintiff has no current connection to, or presence in, this District.

**B.** **Alternatively, the Court could transfer this case to the Southern District of New York under §1404.**

The Court also could elect to treat this aspect of the motion to dismiss as a motion to transfer to the Southern District of New York under 28 U.S.C. §1404, based upon the forum selection clause in the agreement between UBS FS and Plaintiff. See Salovaara v. Jackson Nat. Life Ins. Co., 246 F.3d 289, 299 (3d Cir. 2001) ("[T]here is nothing in [a prior decision] that precludes a district court, faced with a Rule 12 motion based on a forum selection clause, from considering §1404 factors to determine whether transfer is the better course."). Recently, the Supreme Court held that a valid and applicable forum selection clause is "given controlling weight in all but the most exceptional cases" under §1404. See Atl. Marine Constr. Co. v. U.S. Dist. Court, 134 S. Ct. 568, 581 (2013). In such situations, the "plaintiff's choice of forum merits no weight." Id. Further, for § 1404 purposes, "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." Id. at 582. Thus, in evaluating a §1404 transfer request, courts may look only to public interest factors, which "will rarely defeat a transfer motion."[7] Here, those factors are not implicated at all, and therefore transfer is appropriate in the event the Court decides not to dismiss the case outright.

**C.** **Most of Plaintiff's claims fail as a matter of law.**

If the Court decides to dismiss or transfer this case to the Southern District of New York, it need not address any of the substantive issues raised in the Complaint. But even if

---

[7] The public interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." Id. at 581 n.6.

the court nevertheless decides to retain this case (in spite of the clear language of the forum selection clauses that mandate venue elsewhere), most of Plaintiff's claims still must be dismissed as a matter of law, for the following reasons: (1) most of Plaintiff's claims are barred under New York law because they merely duplicate Plaintiff's breach of contract claim; (2) Plaintiff's unjust enrichment claim is barred because the parties have a valid, binding contract; (3) Plaintiff's New York statutory claim is barred because the alleged harm is not "consumer oriented"; (4) his RICO claims are statutorily barred because they are securities fraud claims; and (5) Plaintiff's class action allegations must be stricken because they fail on the face of the complaint.

1.   **Plaintiff's claims for fraud, negligence, breach of fiduciary duty, and unjust enrichment are barred as duplicative of his breach of contract claim.**

Plaintiff's claims for fraud, negligence, breach of fiduciary duty, and unjust enrichment are barred as a matter of law, as they duplicate his breach of contract claim in Count V. Under New York law,[8] which espouses a doctrine much like Pennsylvania's "gist of the action" doctrine, "a tort cause of action generally does not lie where it is duplicative of a claim sounding in contract." Icebox-Scoops v. Finanz St. Honore, B.V., 676 F. Supp. 2d 100, 112-13 (E.D.N.Y. 2009) (noting similarity of New York law to Pennsylvania's "gist of the action" doctrine).

Based upon this doctrine, the New York courts will routinely dismiss tort claims that duplicate breach of contract claims. See, e.g., Eden Roc, LLLP v. Marriott Int'l, Inc., 983

---

8   As noted, the parties' agreement expressly provides that New York law applies here. Compl. at Exhibit A, p. 20 ("This Agreement, its enforcement and the relationship between you and UBS Financial Services shall be governed by the laws of the State of New York, … without giving effect to the choice of law or conflict of laws provisions thereof ….").

N.Y.S.2d 549 (App. Div., 1st Dep't, 2014) (affirming dismissal of trespass claim as duplicative

of breach of contract claim). So too should this Court dismiss Plaintiff's claims for fraud,[9]

negligence,[10] breach of fiduciary duty,[11] and unjust enrichment.[12] All of these claims are

---

[9] <u>Compare</u> Compl. at ¶132 (alleging that Defendants falsely represented to Plaintiff that the Swiss parties had relevant expertise and would make investment decisions consistent with the clients' instructions), <u>with</u> <u>126 Newton St., LLC v. Engineering Services Associates, P.C.</u>, 2014 WL 695358, *2 (N.Y. Supr. Ct. 2014) ("[T]he plaintiff essentially alleges that the defendants made false representations concerning their level of skill and experience to induce the plaintiff to enter into a contractual relationship. This cause of action is duplicative of the plaintiff's cause[] of action for breach of contract ...."), and <u>MMCT, LLC v. JTR College Point, LLC</u>, ___ N.Y.S.2d ___, 2014 WL 6475785, *1 (App. Div, 1st Dep't, 2014) (holding fraudulent inducement claim is barred as duplicating breach of contract claim, because the representation alleged was not collateral to the contract, and the plaintiff alleged only that the defendant was insincere when it promised to perform under the contract).

[10] <u>Compare</u> Compl. at ¶140 (alleging Defendants owed a duty to act with "due care" in handling investments on Plaintiff's behalf, a duty that indisputably arose solely out of the parties' contracts, and not a matter of social policy under the law of negligence), <u>with</u> <u>Board of Managers of Soho North 267 West 124th Street Condominium v. NW 124 LLC</u>, 984 N.Y.S.2d 17, 18-19 (App. Div., 1st Dep't, 2014) (affirming dismissal of negligence claims as duplicative of breach of contract claim, because "breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. Here, Plaintiff failed to allege any legal duty that would give rise to an independent tort cause of action." (citations omitted)), and <u>Sutton v. Hafner Valuation Group, Inc.</u>, 982 N.Y.S.2d 185, 188 (App. Div., 3rd Dep't, 2014) (affirming dismissal of negligence claim because "[t]he negligence or negligent misrepresentation claim could not survive as it is based on the same alleged wrongful conduct as the breach of contract claim, rendering it duplicative, and defendants have no special relationship or legal duty to plaintiff other than their contractual relationship.").

[11] <u>Compare</u> Compl. at ¶¶152, 153 (alleging contracts between the parties and the Swiss parties provided the basis upon which fiduciary duties were owed by Defendants and Swiss parties), <u>with</u> <u>Mosaic Caribe, Ltd. v. AllSettled Group, Inc.</u>, 985 N.Y.S.2d 33, 36 (App. Div., 1st Dep't, 20114) (affirming dismissal of fiduciary duty claim as duplicative of breach of contract claim, where plaintiff "failed to allege that [defendant] had any duty to [plaintiff] apart from that set forth in the contract, and thus, that it had any independent fiduciary duty"), and <u>JMF Consulting Group II, Inc. v. Beverage Marketing USA, Inc.</u>, 948 N.Y.S.2d 314, 317-18 (App. Div., 2nd Dep't, 2012) (reversing trial court's failure to dismiss breach of fiduciary duty claim, where terms of contract between parties established the duties owed, thus making fiduciary duty claim duplicative of contract claim).

premised on the duties UBS FS and Seifert allegedly owed to Plaintiff pursuant to the parties' contract (or are premised on the Swiss parties' duties under the separate Swiss contracts). Those claims duplicate the contract claim, and therefore are barred by New York law. Accordingly, Counts I through IV of Plaintiff's Complaint should be dismissed.

**2.**     <u>Plaintiff's negligence-based claims are time-barred.</u>

In addition to failing as duplicative of Plaintiff's breach of contract claim, Plaintiff's negligence and negligent breach of fiduciary duty[13] claims are time-barred. The statute of limitations for these claims is three years. <u>See</u> N.Y. Civ. Prac. Law & Rules, §214 (negligence limitation period); <u>Carbon Capital Mgmt., LLC v. Am. Express Co.</u>, 932 N.Y.S.2d 488, 495 (App. Div., 2nd Dep't, 2011) (negligent breach of fiduciary duty limitations period). According to the Complaint, Plaintiff suffered his alleged injury in "late 2008" and specifically complained about it to Seifert then.[14] <u>See</u> Compl. ¶35. Therefore, at the latest, Plaintiff would

---

(footnote continued from previous page)

[12]    <u>See</u> <u>Benham v. eCommission Solutions, LLC</u>, 989 N.Y.S.2d 20, 21-22 (App. Div., 1st Dep't, 2014) (plaintiff's unjust enrichment claim dismissed as duplicative of contract claim); <u>Scarola Ellis LLP v. Padeh</u>, 984 N.Y.S.2d 56, 59 (App. Div., 1st Dep't, 2014) ("It is well settled that a claim for unjust enrichment does not lie where it duplicates or replaces a conventional contract claim.").

[13]    New York recognizes different limitations periods for negligence-based breach of fiduciary duty claims (3 years) and fraud-based breach of fiduciary duty claims (6 years). <u>See, e.g.</u>, <u>Carbon Capital Mgmt., LLC v. Am. Express Co.</u>, 932 N.Y.S.2d 488, 495 (App. Div., 2nd Dep't, 2011). Plaintiff has alleged breach of fiduciary duty claims sounding in both negligence and fraud.

[14]    Indeed, prior to filing this action, Plaintiff commenced an action by Summons in Dauphin County, Pa. in which he sought pre-complaint discovery. The entire premise of that action was his alleged complaint about his losses to Seifert in late 2008, and Seifert's alleged comment that in such circumstances UBS would make the customer whole. <u>See</u> <u>Knopick v. UBS AG</u>, Dauphin County No. 2013-CV-9804. Plaintiff, of course, had the same judicial process available to him at that time.

have needed to file his Complaint by 2011 in order to assert these claims. He did not file any such claim against UBS FS and Seifert until much later, and therefore these claims are time-barred.

To avoid this result, Plaintiff attempts to argue in his Complaint that the statute of limitations should be tolled due to Defendants' and the Swiss parties' alleged intentional concealment of facts from Plaintiff. This argument fails. Plaintiff's negligence-based claims are governed by New York's discovery rule, which is codified at N.Y. Civ. Prac. Law & Rules, §203(g). Under that rule, the plaintiff has the longer of the standard limitations period or two years "from the time when facts were discovered or from the time when facts could with reasonable diligence have been discovered." Id. Where the plaintiff seeks to invoke the discovery rule, he bears the burden of proving that the alleged facts comprising his claim were concealed from him, and that he could not have reasonably discovered them earlier. See, e.g., Julian v. Carroll, 704 N.Y.S.2d 654, 655 (App. Div., 2d Dep't, 2000) (citing Hillman v. City of N.Y., 693 N.Y.S.2d 224 (App. Div., 2d Dep't, 1999); Lefkowitz v. Appelbaum, 685 N.Y.S.2d 460 (App. Div., 2d Dep't, 1999)).

Under either option, Plaintiff's negligence-based claims are time-barred because Plaintiff was on inquiry notice of the wrongdoing he alleges at the time of his alleged injury based on the very public prosecution of UBS AG, at the very latest by February 18, 2009, when the Deferred Prosecution Agreement, referenced in Plaintiff's Complaint, was entered into between UBS AG and the United States Government. See United States v. UBS AG, No. 0:09-cr-60033-JIC-1, Dkt. 20 (S.D. Fla. Feb. 18, 2009). Plaintiff goes to great lengths to document this wrongdoing in his Complaint. See Compl. at ¶¶89 – 111.

The Southern District of New York has recognized that tolling is inappropriate under similar circumstances.  See Gonzalez v. Nat'l Westminster Bank PLC, 847 F. Supp. 2d 567, 572 (S.D.N.Y. 2012).  In Gonzalez, the plaintiffs sued a bank, alleging that they lost millions of dollars due to a fraudulent loan scheme.  Id. at 568.  The plaintiffs further alleged that the bank had fraudulently concealed the nature of the fraud, which had prevented them from bringing their claim earlier.  Id. at 569.  The court disagreed, observing that the plaintiffs' factual allegations "mirrored in many respects" a November 2003 United States Senate Report on the defendant bank.  Id. at 570-71.  Considering this report along with public hearings that were held, the court concluded that the plaintiff was on inquiry notice at least as of the time of the report, which placed the plaintiffs' claims outside of the limitations period.  Id. at 570-72.

The result in Gonzalez should control here.  The federal prosecution of UBS AG was widely publicized, as was the February 18, 2009 Deferred Prosecution Agreement.  Plaintiff therefore was on inquiry notice at least from that date.  As such, the limitations period had expired on Plaintiff's negligence-based claims well before he filed any action against UBS FS and Seifert.  Therefore, Plaintiff's claims for gross negligence (Count II) and negligent breach of fiduciary duty (Count III) should be dismissed.

**3.      Plaintiff's unjust enrichment claim is barred because the parties have a valid and enforceable contract.**

Plaintiff's unjust enrichment claim also should be dismissed because New York law does not permit unjust enrichment claims where there is a valid and enforceable contract. See Estate of Sonnelitter v. Estate of White, 983 N.Y.S.2d 149, 152 (App. Div., 4th Dep't, 2014) (holding unjust enrichment claim barred by contract); Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790–791 (N.Y. 2012) ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.").

Further, even if the Court could allow the unjust enrichment claim to proceed in spite of New York law, it nevertheless fails because it does not meet pleading requirements. Plaintiff's unjust enrichment claim is based on the notion that Defendants "misappropriated" his money. See Compl. at ¶169. But this is insufficient to withstand the Twombly plausibility analysis, as it is based on mere speculation. See, e.g., Mims v. City of Philadelphia, 2010 WL 2077140, *6 (E.D. Pa. 2010) (Yohn, J.) (dismissing claim where complaint failed to "raise a right to relief above the speculative level"); In re Pennsylvania Title Ins. Antitrust Litigation, 648 F. Supp. 2d 663, 689 (E.D. Pa. 2009) (Yohn, J.) (same). Indeed, Plaintiff expressly admits in paragraph 35 of his complaint that whether one of the Swiss parties "actually misappropriated [Plaintiff's] money is unknown." Plaintiff therefore asserts no facts supporting the claim of misappropriation. This claim therefore is based on nothing but pure speculation and fails to meet applicable pleading standards.

### 4. Plaintiff's claim under New York General Business Law § 349 fails because the alleged harm is not "consumer oriented."

Plaintiff's claim under New York's consumer protection law, New York General Business Law §349, fails because it is contrary to well-settled law. Under that statute, a plaintiff must demonstrate that the allegedly harmful action or practice is "consumer oriented." See Gray v. Seaboard Sec. Inc. 788 N.Y.S.2d 471, 472 (App. Div., 3d Dep't, 2005) (citation omitted); Green Harbour Homeowners' Ass'n v. G.H. Dev. & Constr., 763 N.Y.S.2d 114 (App Div., 3d Dep't, 2003). In other words, this statute is only meant to apply to "traditional consumer products, such as vehicles, appliances or groceries," as well as other "goods to be 'consumed' or 'used.'" See Gray, 788 N.Y.S.2d at 472 (citation omitted); see also DeAngelis v. Corzine, 17 F. Supp. 3d 270, 285 (S.D.N.Y. 2014) ("The [consumer protection] statute offers redress only for those public harms suffered in connection with consumer activity."). Securities transactions are

outside the scope of the statute. <u>See, e.g.</u>, <u>Brooks v. Key Trust Co. Nat'l Assn.</u>, 809 N.Y.S.2d 270, 273 (App Div., 3d Dep't, 2006); <u>Gray</u>, 788 N.Y.S.2d at 472; <u>DeAngelis</u>, 17 F. Supp. 3d at 284 (citing cases). Even "ancillary services" to securities transactions do not fall within the protection of New York's consumer law. <u>Roling v. E*Trade Securities LLC</u>, 860 F. Supp. 2d 1029, 1033 (N.D. Cal. 2012) (citing <u>Gray</u>, 788 N.Y.S.2d at 472).

Plaintiff, in his complaint, merely asserts in conclusory fashion that Defendants' alleged behavior was "consumer-oriented." Compl. at ¶192. But Plaintiff's claim is not recognized under New York's consumer protection statute. An investor who loses money buying and selling securities has no claim under New York General Business Law §349. Defendants' role here was of the "ancillary" variety, as they were alleged merely as having connected Plaintiff to the Swiss parties. Defendants' "services" to Plaintiff here simply are not actionable under New York's consumer protection law. Therefore, Count VII of the Complaint should be dismissed.

**5. Plaintiff's RICO claims also fail because they are securities fraud claims.**

Like Plaintiff's New York consumer law claim, his claims under the Racketeer Influenced and Corrupt Organizations Act are doomed by their underlying premise – securities fraud. The so-called "RICO Amendment" to the Private Securities Litigation Reform Act ("PSLRA") has foreclosed securities fraud as a "predicate act" on which a RICO claim can be based. <u>See</u> <u>Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.</u>, 189 F.3d 321, 327-28 (3d Cir. 1999). This amendment reaches *all* conduct that ultimately could constitute securities fraud. <u>See</u> <u>id.</u> at 331 ("[A] plaintiff cannot avoid the RICO Amendment's bar by pleading mail fraud, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud.")

The plain language of the complaint, as factually preposterous as it is on its face, nonetheless demonstrates that Plaintiff relies on predicate acts sounding in securities fraud. The complaint plainly alleges that Defendants and Swiss parties:

> [I]nduce[d] U.S. citizens into contracting with the UBS Enterprise, *to invest their monies* with the UBS Enterprise and then for Defendants to perpetrate a fraud on them to avoid U.S. penalties and criminal charges, *by effectively 'losing' the investment*.

See Compl. at ¶¶204, 206) (emphasis added). Put more simply, Plaintiff's claim is: "I invested money, now it's gone, and it's my broker's fault."[15] This is the precise claim the RICO Amendment was designed to preclude. See Bald Eagle, 189 F.3d at 327-28 (citing Matthews v. Kidder, Peabody & Co., Inc., 161 F.3d 156, 164 (3d Cir. 1998) (quoting 141 Cong. Rec. H2771)) ("The 'focus' of the Amendment was on 'completely eliminating the so-called 'treble damage blunderbuss of RICO' in securities fraud cases.'"). Plaintiff cannot state a RICO claim under the facts alleged. The RICO claims in Counts VIII and IX, must be dismissed.

### 6. Plaintiff's assertion of class action allegations should be stricken.

Finally, Plaintiff's class action allegations, which obviously were included for their in terrorem effect rather than their substantive merit, should be stricken, for at least the following several reasons.[16]

---

[15] Although Plaintiff blames the Swiss parties for his investment losses, no such allegation is leveled against either UBS FS or Seifert – with good reason, as he has profited handsomely from that relationship, and UBS FS and Seifert remain his investment professionals to this day. See Compl. at ¶¶ 14-15.

[16] While it is admittedly rare to strike class action allegations at this stage, this Court has held it is appropriate to do so where it is clear that Plaintiff cannot meet the requirements for a class action. See Thompson v. Merck & Co., Inc., 2004 WL 62710, *2 (E.D. Pa. 2004) (granting motion to strike class action allegations before class action proceedings and without class discovery); see also Woodard v. FedEx Freight East, Inc., 250 F.R.D. 178, 182 (M.D. Pa.

(footnote continued on next page)

First, the class is not ascertainable. Plaintiff proffers as a class of all those persons who were referred to certain Swiss UBS parties for banking or financial advising contracts over a ten year period from 2000 to 2010. See Compl. at ¶113. But Plaintiff does not define what constitutes a "referral." He also does not, and could not, establish a concrete method for how these "referred" individuals might be identified.[17] There simply is no way to determine who the putative class members are without an individualized mini-trial for each supposed class member to determine if each such person had communications with the relevant parties that constituted a "referral" and that included the false and fraudulent representations that Plaintiff claims were made. The same is true of the material facts that Knopick claims were omitted and not shared with him and the class members. Making that finding would require a fact-intensive inquiry that is unsuitable for treatment on a class-wide basis.[18]

---

(footnote continued from previous page)

2008) (striking class action allegations, reasoning that "a district court will strike class action allegations without permitting discovery or waiting for a certification motion where the complaint and any affidavits clearly demonstrate that Plaintiff cannot meet the requirements for a class action"); Semenko v. Wendy's Intern., Inc., 2013 WL 1568407 (W.D. Pa. 2013) (striking class action allegations).

[17] See Carrera v. Bayer Corp., 727 F.3d 300, 305, 306 (3d Cir. 2013) ("[A] plaintiff must show, by a preponderance of the evidence, that the class is 'currently and readily ascertainable based on objective criteria,' and a trial court must undertake a rigorous analysis of the evidence to determine if the standard is met."; further, a "critical need" of the court in reviewing a class certification motion is "'to determine how the case will be tried,' including how the class is to be ascertained."; and, therefore, "[i]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate.").

[18] Because putative class members are not ascertainable, Plaintiff therefore cannot meet his burden to satisfy the numerosity requirement.

Second, Plaintiff's claims involve individualized showings, and thus Plaintiff cannot satisfy the commonality and predominance requirements.[19] Plaintiff's action, and hence his class claim, is founded on representations and statements that were made to him in order to induce him to engage the Swiss parties. See Compl. at ¶117(c) (alleging class action is founded on "[w]hether UBS FS and its employees made false and misleading statements to US customers"). Indeed, Count I of Plaintiff's action is for fraud, which requires a showing of justifiable reliance by the plaintiff. See, e.g., Heckl v. Walsh, ___ N.Y.S.2d ___, 2014 WL 5901092, *2 (App. Div., 4th Dep't, 2014). Each person allegedly defrauded would need to show he or she justifiably relied on the statements allegedly made. The courts have held, time and again, that the need for proof of such individualized showings renders cases like this one not conducive to class treatment. See Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 190 (3d Cir. 2001) (rejecting class action based on oral misrepresentations made to various plaintiffs, as "it has become well-settled that, as a general rule, an action based substantially on oral rather than written communications is inappropriate for treatment as a class action").[20]

---

[19] The predominance standard under Rule 23 demands "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed.R.Civ.P. 23(b)(3). "Issues common to the class must predominate over individual issues." Newton v. Merrill Lynch, Pierce, Fenner & Smith, 259 F.3d 154, 186-87 (3d Cir. 2001). "Predominance measures whether the class is sufficiently cohesive to warrant certification." Newton, 259 F.3d at 187. Commonality requires a plaintiff to show that the class members "have suffered the same injury." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011). Due to their similarity, courts "consider the Rule 23(a) commonality requirement to be incorporated into the more stringent Rule 23(b)(3) predominance requirement, and therefore deem it appropriate to 'analyze the two factors together, with particular focus on the predominance requirement.'" In re Ins. Brokerage Antitrust Litig., 579 F.3d 241, 266 (3d Cir. 2009).

[20] See also Glover v. Udren, 2013 WL 6237990, *21 (W.D. Pa. 2013) (refusing to certify class action for Pennsylvania Consumer Protection Law claims because the claim requires an individualized finding respecting each plaintiff's justifiable reliance); Reyes v. Zions First

(footnote continued on next page)

Third, Plaintiff's claim for investments losses, to the extent such losses could ever be causally linked to the alleged class-wide misrepresentations,[21] also is founded on the notion that Defendants failed to follow his specific investment objectives and instructions. See, e.g. , Compl. at ¶¶22, 29, 30. But the nature of Plaintiff's (and each supposed class member's) unique investment objectives and instructions, as well as whether and to what extent those unique instructions were followed, also presents a question of individualized showing, which again is not conducive to class treatment.

Fourth, while Plaintiff claims class relief is superior because the damages suffered by Plaintiff and the class members is "relatively small," Compl. at ¶122, Plaintiff in this case claims he lost $11 million. See Compl. at ¶34. Thus, even if one were to assume Plaintiff is typical of the class, then class relief would not be superior to individual relief,[22] given each individual would be adequately incentivized to bring his or her own individual claims. See Forman v. Data Transfer, Inc., 164 F.R.D. 400, 404 (E.D. Pa. 1995) ("Class actions are a superior method of adjudication where a large number of plaintiffs may have been injured, but not to an extent to induce the instigation of individual litigation.").

---

(footnote continued from previous page)

Nat. Bank, 2013 WL 5332107, *7-*8 (E.D. Pa. 2013) (refusing to certify class where action depended on practices and oral statements representations made by telemarketers to plaintiffs that they allegedly relied upon).

[21] Indeed, Plaintiff does not  plausibly allege, except in the most attenuated "but for" sense, how his investment losses, and hence any class members' investment losses, are causally connected to the alleged class-wide misrepresentations.

[22] See Schwartz v. Dana Corp/Parish Div., 196 F.R.D. 275, 285 (E.D. Pa. 2000) (before certifying a class under Rule 23(b)(3), a court must find "all other methods of resolving the issues in a case to be inferior to a class action").

Fifth, and finally, Seifert is not a proper class defendant. Seifert is not alleged to have dealt with the class of persons – only Plaintiff. Seifert therefore is an inappropriate class defendant, and cannot have personal liability for any class claims. Accordingly, the class action allegations as to Seifert should be stricken.

IV.     **CONCLUSION**

For the foregoing reasons, Defendants, UBS Financial Services Inc. and Susan Seifert, respectfully request that this Court enter an order in the attached form dismissing the complaint of the plaintiff, Nicholas Knopick.

Respectfully submitted,

*/s/ David C. Franceski, Jr.*
David C. Franceski, Jr. (Pa. Id. No. 32664)
Karl S. Myers (Pa. Id. No. 90307)
Alex L. Rubenstein (Pa. Id. No. 313657)
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
(215) 564-8000
dfranceski@stradley.com
kmyers@stradley.com
arubenstein@stradley.com

Attorneys for Defendants,
UBS Financial Services Inc. and Susan Seifert

Dated: December 19, 2014