**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **NICHOLAS KNOPICK, individually and on behalf of those similarly situated,** | **CIVIL ACTION** |
| **Plaintiff,** | **NO. 14-05639** |
| **v.** | |
| **UBS FINANCIAL SERVICES, INC.,** | |
| **Defendant.** | |

**PAPPERT, J.**                                                              **APRIL 13, 2015**

**MEMORANDUM**

Nicholas Knopick  ("Knopick") brings a putative class action on behalf of himself and those similarly situated seeking to recover for the loss of nearly all of his $12 million investment with the Swiss investment entity UBS Swiss Financial Advisors ("UBS SFA"), and its parent company, UBS AG.  Defendant UBS Financial Services, Inc. ("UBS FS") asks the Court to enforce the forum selection clause in the parties' Master Account Agreement ("Master Agreement") and transfer this case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).  Because the forum selection clause is inapplicable to Knopick's claims, the Court denies the motion to transfer.

**Factual Background**

In January 2007, Knopick opened a brokerage account with UBS FS.  Prior to opening the account, Knopick signed a "Client Information and Agreement for Individuals" ("Client Agreement") with UBS FS.  (Am. Compl. ¶ 97.)  By signing the Client Agreement, Knopick "agree[d] to be bound by [the] terms and conditions [of the Master Agreement]" which was contained within.  Knopick then placed several million dollars in the newly opened account. (Am. Compl. ¶ 76.)  Susan Seifert ("Seifert"), a licensed securities broker in UBS FS's

Baltimore office, worked with Knopick to invest "conservatively in blue chip common stocks with high dividend yields."[1]  (*Id.* ¶¶ 16, 76.)

In March or April of 2007, Seifert introduced Knopick to Mr. Knöpfel[2], a Swiss investment advisor with UBS SFA.  UBS SFA, like UBS FS, is a subsidiary of UBS AG.  (*Id.* ¶¶ 15, 17.)  UBS SFA is registered as an investment advisor with the Securities and Exchange Commission ("SEC").  (*Id.* ¶ 17.)  Seifert allegedly praised Knöpfel's "investment prowess" and this praise induced Knopick to open two accounts with UBS SFA (the "Swiss Accounts").  (*Id.* ¶¶ 77-78.)  Knopick signed the requisite contracts with UBS SFA and UBS AG to open the Swiss Accounts.  (*Id.* ¶¶ 108-19; 126-31.)  Knopick then invested an additional $12 million in the Swiss Accounts after he "carefully explained his investment strategy to Mr. Knöpfel, in Ms. Seifert's presence."  (*Id.* ¶ 78; *see also id.* ¶ 134.)

Knöpfel allegedly disregarded Knopick's investment strategy for the Swiss Accounts by investing widely and recklessly, trading Knopick's money into foreign currencies and purchasing an "inexplicable collection" of stocks and bonds in foreign currencies.  (*Id.* ¶ 85.)  Knöpfel was removed from his position at some point between August 2008 and October 2008.  (*Id.* ¶ 88.)  Knopick was never notified of Knöpfel's removal.  (*Id.*)  In September 2008, UBS SFA contacted Knopick to inform him that they needed to liquidate his account.  (*Id.* ¶ 87.)  By the end of 2008, Knopick's $12 million investment in the Swiss Accounts dwindled to roughly $900,000.  (*Id.* ¶ 90).

Knopick asserts that UBS AG created UBS SFA, an entity authorized to conduct business in the United States, to redirect scrutiny while UBS AG engaged in a cross-border tax scheme

---

[1] Seifert followed Knopick's investment instructions and continues to serve as Knopick's investment advisor and broker for that account.  (Am. Compl. ¶ 16, 76.)

[2] Knöpfel's first name is not provided in the amended complaint.

designed to help American citizens evade their tax obligations through undeclared Swiss accounts. (*Id.* ¶¶ 34, 44, 53.) UBS SFA was allegedly used to repatriate funds to the United States from the undeclared UBS AG accounts. (*Id.* ¶ 34.) UBS FS allegedly furthered this scheme by referring American clients to UBS SFA and arranging meetings with UBS SFA employees. (*Id.* ¶¶ 34, 146.) In making these referrals, UBS FS, through Seifert and other brokers, allegedly concealed the following facts: that UBS AG was under criminal investigation by the Department of Justice ("DOJ") in 2007 for an illegal cross-border business with United States citizens; that the SEC had contacted UBS AG in December 2007 regarding UBS AG's cross-border tax scheme; that UBS AG employees were detained or arrested in 2008; that UBS AG entered into a Deferred Prosecution Agreement with the DOJ in 2009; and that members of the UBS SFA team had been convicted of conspiracy to defraud the United States. (*Id.* ¶ 151.) Knopick alleges that UBS FS further conspired with UBS SFA and UBS AG to conceal the theft or loss of his money by failing to provide any information or explanation regarding Knöpfel's disappearance even though they allegedly have access to this information. (*Id.* ¶ 91.)

Knopick asserts claims against UBS FS for fraud, gross negligence, breach of fiduciary duty, unjust enrichment, breach of contract, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, violation of the New York General Business Law § 349, Civil RICO (18 U.S.C. § 1962(c)), and Conspiracy to Violate the Civil RICO Statute.

**Procedural History**

Knopick originally commenced this action against UBS AG, UBS SFA, Rene Elste—the broker who replaced Knöpfel, UBS FS, and Seifert by filing a praecipe for writ of summons in the Dauphin County Court of Common Pleas on November 8, 2013. (*Id.* ¶ 102.) Knopick then sought pre-complaint discovery and, in response, UBS FS and Seifert moved to compel arbitration pursuant to the terms of the Master Agreement. (*Id.* ¶ 104.) The Common Pleas

Court granted the motion and dismissed the writ as to UBS FS and Seifert.  (*Id.* ¶ 105; Pl.'s Br.

Ex. A., Doc. No. 25.)  Knopick refiled his claims against UBS FS and Seifert in a FINRA

arbitration proceeding in FINRA's Philadelphia district on August 27, 2014.  (Am. Compl. ¶

106.)  Knopick initially filed the FINRA statement of claims as a class action and defendants

objected on the basis that class action claims are excluded from arbitration.  (*Id.* ¶ 107.)  The

parties' FINRA case manager determined that Knopick's FINRA claims were brought in his

individual capacity and are thus eligible for arbitration.  (Pl.'s Br. Ex. D.)  The FINRA claims

remain pending.

Knopick then initiated this action by filing a putative class action complaint on October

1, 2014 against UBS FS and Seifert.[3]  (Doc. No. 1.)  The following day Knopick filed a

substantially similar putative class action complaint against UBS SFA, Rene Elste, and UBS AG

in the Dauphin County Court of Common Pleas.  (Def.'s Mot. Transfer 3 n.3, Doc. No. 21.)  That

action was removed to the Middle District of Pennsylvania and is presently pending.  (*Id.*)

UBS FS and Seifert moved to dismiss the complaint before the Court on December 19,

2014.  (Doc. No. 8.)  Knopick mooted the motion to dismiss on February 19, 2015 by filing an

amended complaint.  (Doc. No. 14.)  The Court held a Rule 16 Conference with the parties on

March 2, 2015.  After the conference, the Court ordered the parties to brief whether venue is

properly laid in the Eastern District of Pennsylvania, and, if venue is improper, why the case

---

[3] At oral argument on this motion, Knopick's counsel confirmed that the only difference between Knopick's FINRA claims and the claims pending before this Court is the class action designation.  (Hr'g Tr. 11.)  "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).  "To invoke this exception, every putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012).  "The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." *Id.* (citing *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2009)).  The Court must rigorously analyze the evidence supporting class certification and, only after this intensive probe, may certification be proper.  *Comcast Corp.*, 133 S. Ct. at 1432. Bearing this burden in mind, parties should plead as class actions only those claims for which there is adequate factual support.  This label is not designed to facilitate the circumvention of pre-dispute agreements or to achieve strategic purposes not contemplated by Federal Rule of Civil Procedure 23.

should not be transferred to the Middle District of Pennsylvania, an indisputably proper venue,[4] pursuant to 28 U.S.C. § 1406.  (Doc. No. 18.)

Before responding to the Court's Order, Knopick voluntarily dismissed Seifert to ensure venue in the Eastern District of Pennsylvania.[5]  (Doc. No. 19.)  Knopick asserted that his voluntary dismissal of Seifert made venue proper in this District pursuant to 28 U.S.C. § 1391(b)(1).  (Doc. No. 20.)  UBS FS, in its response, conceded that venue is proper in this District, but argued that the forum selection clause contained in the "Applicable Law" section of the Master Agreement requires transfer under 28 U.S.C. § 1404(a) to the Southern District of New York.  (Doc. No. 21.)  Accordingly, the Court ruled that venue is proper in this District and construed UBS FS's argument as a motion to transfer pursuant to § 1404(a).  (Doc. No. 23.) Knopick was granted a week to respond to the transfer motion.  In response he challenged the applicability of the forum selection clause.  The Court held oral argument on the motion on March 26, 2015.

**Discussion**

A district court may transfer a civil action to any other district court where it might have been brought "[f]or the convenience of parties and witnesses" and "in the interest of justice."  28 U.S.C. § 1404(a).  Ordinarily, a court evaluates a § 1404(a) motion by considering the relevant private and public interest factors.  *Atl. Marine Const. Corp. v. U.S. Dist. Ct. for W. Dist. Tex.*,

---

[4] Knopick pled venue pursuant to 28 U.S.C. §1391(b)(2) and (b)(3).  (Am. Compl. ¶ 11.)  Under these sections, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . ." or "if there is no district in which an action may otherwise be brought . . . any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. §1391(b)(2)-(3).  Knopick resides in the Middle District of Pennsylvania.  (Am. Compl. ¶¶ 11, 14.)  He received all correspondences from UBS FS, signed the agreements with UBS SFA and UBS AG, and received all written and verbal communications from the Swiss entities at his residence.  (*Id.* ¶¶ 14, 82-84, 86-87, 108, 114, 116, 117, 126.) Knopick also wired his $12 million dollar investment to the Swiss Accounts from his bank account in Pennsylvania. (*Id.* ¶ 78.)  Thus, a "substantial part of events" giving rise to Knopick's claim occurred in the Middle District of Pennsylvania and it is a proper venue pursuant to §1391(b)(2).

[5] Knopick has not voluntarily dismissed Seifert from the FINRA proceeding.  (Def.'s Mot. Transfer 1 n.1.)

134 S. Ct. 568, 581 (2013).  "The calculus changes, however, when the parties' contract contains

a valid forum-selection clause, which 'represents the parties' agreement as to the most proper

forum.'"  *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)).  Unlike most

challenges to the enforcement of a forum selection clause, however, the Court is not here tasked

with deciding the clause's enforceability *per se*.  Thus, the analysis set forth by the Supreme

Court in *Atlantic Marine* is not controlling.[6]  *See Atl. Marine Const. Co.*, 134 S. Ct. at 581-83.

Rather, the Court must decide in first instance whether, given the specific language of the Master

Agreement's Arbitration provision, the separate forum selection clause even applies to

Knopick's claims.

When asked to interpret a contract, the Court must first decide, as a matter of law,

whether the contractual language is ambiguous.  *Kass v. Kass*, 696 N.E.2d 174, 180 (N.Y. 1998);

*Hutchinson v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986).[7]  If the Court concludes that

the language is unambiguous, the Court must determine its meaning by its contents alone.  If the

Court finds that the language is ambiguous, the fact-finder must decide its meaning.  *Brad H. v.

City of New York*, 951 N.E.2d 743,746 (N.Y. 2011); *Ins. Adjustment Bureau, Inc. v. Allstate Ins.

Co.*, 905 A.2d 462, 469 (Pa. 2006).

---

[6] Under that framework, a court must first "determine whether the forum-selection clause is valid and enforceable." *Silvis v. Ambit Energy, L.P.*, -- F. Supp. 3d --, No. 14-cv-5005, 2015 WL 1134780, at *2 (E.D. Pa. Mar. 13, 2015); *accord Atl. Marine Const. Co.*, 134 S. Ct. at 581 n.5 (presupposing that the forum selection clause was valid and enforceable).  Having determined that the forum selection clause is valid and enforceable, "a court must consider whether, pursuant to § 1404(a), 'extraordinary circumstances' militate against enforcing the forum-selection clause." *Silvis*, 2015 WL 1134780, at *2 (citing *Atl. Marine Const. Co.*, 134 S. Ct. at 581).

[7] The Master Agreement provides that "[t]his Agreement, its enforcement and the relationship between you and UBS Financial Services shall be governed by the laws of the State of New York, including the arbitration provisions contained herein, . . ." (Am. Compl. Ex. A, at 20.)  Knopick, however, cites Pennsylvania law in support of his argument that the forum selection clause is inapplicable.  UBS FS does not challenge Knopick's reliance on Pennsylvania law.  (Hr'g Tr. 36.)  Rather, the parties agree that the choice of law determination is immaterial to the Court's interpretation of the Master Agreement.  (Hr'g Tr. 36, 46.)  Because the principles of contract interpretation are well settled "and do not differ between New York and Pennsylvania law" the Court looks, at this juncture, to the principles of both states.  *Pacific Emp'rs Ins. Co. v. Global Reinsurance Corp. of Am.*, 693 F.3d 417, 425-26 (3d Cir. 2012).

"A contract is ambiguous only if it is written so imperfectly that it is susceptible to more than one reasonable interpretation.'" *Pacific Emp'rs Ins. Co.*, 693 F.3d at 426 (internal quotation marks omitted) (citing New York and Pennsylvania law). The parties' disagreement as to the proper construction of the contract does not render a contract ambiguous. *Id.* "Ambiguity is determined within the four corners of the document; it cannot be created by extrinsic evidence that the parties intended a meaning different than that expressed in the agreement. . . ." *Brad H.*, 951 N.E.2d at 746; *see also Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982) ("It is well established that the intent of the parties to a written contract is to be regarded as being embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement." (citations omitted)).

When determining whether a contract is ambiguous, the Court must examine the entire contract and give effect to all of the provisions therein. *Kass*, 696 N.E.2d at 180-81 (quotation omitted); *Capek v. Devito*, 767 A.2d 1047, 1050 (Pa. 2001). "The Court will not interpret one provision of a contract in a manner which results in another portion being annulled." *Lesko v. Frankford Hosp.-Bucks Cnty.*, 15 A.3d 337, 342 (Pa. 2011). Finally, "courts should read contracts to avoid ambiguities if possible." *Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 506 (E.D. Pa. 2014).

The Master Agreement reads, in pertinent parts:

> Applicable Law
>
> **In the event that the arbitration clause contained herein is found to be unenforceable**, you and UBS Financial Services agree that they will, for purposes of determining all matters with regard to this Agreement, **submit to the exclusive jurisdiction of the courts of the State of New York and the federal courts sitting in the Southern District of New York**.

Arbitration

No person shall bring a putative or certified class action to arbitration, **nor seek to enforce any pre-dispute arbitration Agreement against any person who has initiated in court a putative class action**; who is a member of a putative class who has opted out of the class with respect to any claims encompassed by the putative class action until:

(I)     THE CLASS CERTIFICATION IS DENIED;
(II)    THE CLASS IS DECERTIFED; OR
(III)   THE CUSTOMER IS EXCLUDED FROM THE CLASS BY THE COURT.

(Compl. Ex. A, at 20-21) (emphasis added).

UBS FS contends that the arbitration provision is unenforceable because, consistent with the second clause, it cannot enforce that provision against Knopick's putative class action claims. Based on this contention, UBS FS asks the Court to find that the arbitration provision is "unenforceable" thereby rendering the forum selection clause applicable. (Hr'g Tr. 35-36; Def.'s Mot. Transfer 8-9 & n.8.) Knopick argues that the forum selection clause is inapplicable because it is expressly conditioned upon the Arbitration provision being found to be unenforceable and no such finding has occurred.[8] (Pl.'s Br. 5; Hr'g Tr. 43.)

The contract is clear and unambiguous. The parties agreed to litigate in the courts of New York if the arbitration provision was found to be unenforceable. The language preceding the forum selection clause describes a condition precedent to its applicability—that the arbitration clause is "found to be unenforceable." *Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd.*, 739 A.2d 133, 139 (Pa. 1999) ("A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." (citing RESTATEMENT (SECOND) OF CONTRACTS § 224)). The non-occurrence of

---

[8] In fact, the Dauphin County Common Pleas Court expressly determined that the arbitration clause was enforceable. (Pl.'s Br. Ex. A.)

this condition precedent renders the forum selection clause inapplicable. *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415, 418 (1995) ("[C]onditions precedent describe acts or events which must occur before a party is obliged to perform a promise made pursuant to an existing contract . . . .").

The parties' agreement to exempt class action claims from arbitration does not translate into an agreement that all class action claims must be brought in the New York courts. **Found to be unenforceable** is much different than UBS FS agreeing not to **seek to enforce** the arbitration agreement. Because "the law does not assume that the language of the contract was chosen carelessly," the parties' use of the phrase "found to be" is of paramount importance. *Pacific Emp'rs Ins. Co.*, 693 F.3d at 426 (citing *Meeting House Lane Ltd. v. Melso*, 628 A.2d 854, 857 (Pa. Super. Ct. 1993)). UBS FS is correct that its agreement to refrain from enforcing the arbitration provision with regard to class action claims means that it cannot enforce the arbitration clause in this case. Unable to enforce is not, however, synonymous with "found to be unenforceable." Merriam Webster defines "finding" as "the result of a judicial or quasi-judicial examination or inquiry especially into matters of fact as embodied in the verdict of a jury or decision of a court, referee, or administrative body." *Merriam-Webster Unabridged Dictionary*, http://unabridged.merriam-webster.com/unabridged/finding (last visited Apr. 4, 2015). Thus, the plain meaning of the phrase "found to be unenforceable" implies that a judicial or quasi-judicial body issued a ruling after the enforceability of the arbitration provision was contested. The Court cannot disregard this phrase and conclude that the parties intended the forum selection clause to govern all claims not subject to arbitration. To do so would "violate a cardinal rule of contractual interpretation that counsels against rendering words or provisions meaningless." *Pacific Emp'rs Ins. Co.*, 693 F.3d at 430 (citing both New York and Pennsylvania law).

UBS FS contends that the Court can simultaneously "find" the arbitration clause unenforceable and enforce the forum selection clause as a result of that finding.  (Hr'g Tr. 20.) Collapsing the two-step process delineated in the Master Agreement into a single step is contrary to the parties' intent as expressed by the plain meaning of their contract.  *Kass*, 696 N.E.2d at 181 ("Where the document makes clear the parties' over-all intention, courts examining isolated provisions should then choose that construction which will carry out the plain purpose and object of the agreement." (citations and internal quotation marks omitted)).  The Master Agreement does not address, or provide a remedy for, the situation where a party pursues essentially identical claims individually in arbitration and as a putative class action in federal court.  The Court cannot manipulate the words of the Master Agreement to cover this unanticipated situation.  *See Pacific Emp'rs Ins. Co.*, 693 F.3d at 426 ("The parties have a right to make their own contract, and it is not the function of the court to rewrite it or give it a construction in conflict with the accepted and plain meaning of the language used." (citation omitted)).

The clear and unambiguous provisions of the Master Agreement compel the interpretation that the forum selection clause is triggered only after the arbitration clause has been found to be unenforceable.  Because the Master Agreement's forum selection clause is inapplicable to Knopick's claims in this Court, UBS FS's motion to transfer venue pursuant to that clause is denied.

An appropriate order follows.

/s/ Gerald J. Pappert
GERALD J. PAPPERT, J.