**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NICHOLAS KNOPICK | : | |
| | : | Civ. No. 14-5639 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UBS FINANCIAL SERVICES, INC. | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT**
**OF THE MOTION TO DISMISS AND STRIKE OF DEFENDANT UBS FS**

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................1

II.    STATEMENT OF FACTS ......................................................................1

    A.    Knopick's Separate Relationship with the Swiss Entities. ....................1
    B.    Knopick's Allegations of Wrongdoing. ................................................3
    C.    Knopick's Class Action Allegations. ....................................................5
    D.    Procedural History. ...............................................................................6

III.   ARGUMENT ..........................................................................................6

    A.    Knopick's Class Action Allegations Must Be Stricken. .......................7
        1.    The Class Action Principles That Apply Here. ...........................9
        2.    Knopick's Proposed Class Does Not Satisfy the Rule 23
             Requirements of Predominance and Commonality. ...................12
        3.    A Class Action is Not a Superior Method for Resolving the Purported
             Claims of the Putative Class Members. ...................................20
        4.    Knopick is Not an Adequate Class Representative, Nor are His claims
             Typical of the Class. ..............................................................21
        5.    The Putative Class is Not Ascertainable. ..................................22

    B.    The RICO Claims Should Be Dismissed. ............................................23
        1.    Knopick Lacks Standing Because the Alleged RICO Violations Are
             Not the Proximate Cause of His Alleged Harm. .......................23
        2.    Knopick's RICO Claims Fail Because They Are Securities Fraud
             Claims. ...................................................................................27
        3.    Knopick's § 1962(d) Claim Fails Because He Fails to Plausibly Aver
             a RICO Conspiracy. ...............................................................28

    C.    SLUSA Precludes Knopick's State Law Claims. .................................29
    D.    Plaintiff's Claim Under New York General Business Law § 349 Fails
        Because the Alleged Harm Is Not "Consumer Oriented." ...................33
    E.    Knopick's Claims for Fraud, Negligence, Breach of Fiduciary Duty, and
        Unjust Enrichment are Barred as Duplicative of His Breach of Contract
        Claim. ..................................................................................................34
    F.    Knopick's Negligence-Based Claims are Time-Barred. .......................36
    G.    Plaintiff's Unjust Enrichment Claim is Barred Because the Parties Have a
        Valid and Enforceable Contract ..........................................................39

IV.   CONCLUSION .....................................................................................39

# TABLE OF AUTHORITIES

<u>C</u>ASES

126 Newton St., LLC v. Eng'g Servs. Assocs., P.C.,
    988 N.Y.S.2d 524 (N.Y. Supr. Ct. 2014) ..............................................................35

Allegheny Gen. Hosp. v. Phillip Morris, Inc.,
    228 F.3d 429 (3d Cir. 2000) .............................................................................24

Amchem Prods., Inc. v. Windsor,
    521 U.S. 591 (1997) ......................................................................................12

Amos v. Franklin Fin. Corp.,
    Civ. No. 10-1285, 2011 WL 5903875 (M.D. Pa. Nov. 22, 2011), aff'd, 509 Fed.
    Appx. 165 (3d Cir. 2013).................................................................................27

Anderson v. Ayling,
    396 F.3d 265 (3d Cir. 2005) .............................................................................27

Anza v. Ideal Steel Supply Corp.,
    547 U.S. 451 (2006) ................................................................................Passim

Atkinson v. Morgan Asset Mgmt., Inc.,
    658 F.3d 549 (6th Cir. 2011) ........................................................................30-32

Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.,
    189 F.3d 321 (3d Cir. 1999) ........................................................................27-28

Barone v. Gerber Prods. Co.,
    Civ. No. 90-2571, 1990 WL 157401 (E.D. Pa. Oct. 11, 1990) ........................................20-21

Bd. of Managers of Soho N. 267 W. 124th St. Condo. v. NW 124 LLC,
    984 N.Y.S.2d 17 (App. Div., 1st Dep't, 2014) ......................................................35

Beck v. Maximus, Inc.,
    457 F.3d 291 (3d Cir. 2006) .............................................................................22

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) ...................................................................................29, 39

Benham v. eCommission Solutions, LLC,
    989 N.Y.S.2d 20 (App. Div., 1st Dep't, 2014) ......................................................35

Berckeley Inv. Grp., Ltd. v. Colkitt,
    455 F.3d 195 (3d Cir. 2006) ........................................................................16-17

Bobbitt v. Milberg, LLP,
    285 F.R.D. 424 (D. Ariz. 2012) ........................................................................... 19

Breslin v. Brainard,
    128 Fed. Appx. 237 (3d Cir. 2005) ................................................................... 26-27

Brooks v. Key Trust Co. Nat'l Assn.,
    809 N.Y.S.2d 270 (App Div., 3d Dep't, 2006) ................................................. 33-34

Broussard v. Meineke Disc. Muffler Shops, Inc.,
    155 F.3d 331 (4th Cir. 1998) ..................................................................... 15, 18-19

Brown v. The E.F. Hutton Group, Inc.,
    991 F.2d 1020 (2d Cir. 1993) ............................................................................. 32

Califano v. Yamasaki,
    442 U.S. 682 (1979) ...................................................................................... 7-8

Carbon Capital Mgmt., LLC v. Am. Express Co.,
    932 N.Y.S.2d 488 (App. Div., 2nd Dep't, 2011) ................................................ 36

Carrera v. Bayer Corp.,
    727 F.3d 300 (3d Cir. 2013) ......................................................................... 7, 22

Chadbourne & Parke LLP v. Troice,
    134 S. Ct. 1058 (2014) ...................................................................................... 30

Comcast Corp. v. Behrend,
    133 S. Ct. 1426 (2013) ........................................................................... 10-11, 16

Corcoran v. N.Y. Power Auth.,
    202 F.3d 530 (2d Cir. 1999) .............................................................................. 18

Corsello v. Verizon N.Y., Inc.,
    18 N.Y.3d 777 (N.Y. 2012) .............................................................................. 39

DeAngelis v. Corzine,
    17 F. Supp. 3d 270 ............................................................................................ 33

Dewey v. Volkswagen Aktiengesellschaft,
    681 F.3d 170 (3d Cir. 2012) .............................................................................. 22

Eden Roc, LLLP v. Marriott Int'l, Inc.,
    983 N.Y.S.2d 549 (App. Div., 1st Dep't, 2014) ............................................. 34-35

Estate of Sonnelitter v. Estate of White,
    983 N.Y.S.2d 149 (App. Div., 4th Dep't, 2014) ................................................ 39

Forman v. Data Transfer, Inc.,
    164 F.R.D. 400 (E.D. Pa. 1995)................................................................21

Gaffin v. Teledyne, Inc.,
    611 A.2d 467 (Del. 1992) ...................................................................16

Gavron v. Blinder Robinson & Co.,
    115 F.R.D. 318 (E.D. Pa. 1987)............................................................16

Gen. Tel. Co. v. Falcon,
    457 U.S. 147 (1982) ...........................................................................7

Georgine v. Amchem Prods, Inc.,
    83 F.3d 610 (3d Cir. 1996) ..................................................................21

Glessner v. Kenny,
    952 F.2d 702 (3d Cir. 1991), overruled on other grounds, Jaguar Cars, Inc. v. Royal
    Oaks Motor Car Co., 46 F.3d 258 (3d Cir. 1995) ............................................28-29

Glover v. Udren,
    Civ. No. 08-990, 2013 WL 6237990 (W.D. Pa. Dec. 3, 2013) ............................................16

Gonzalez v. Nat'l Westminster Bank PLC,
    847 F. Supp. 2d 567 (S.D.N.Y. 2012) ................................................................37-38

Gray v. Seaboard Sec, Inc.
    788 N.Y.S.2d 471 (App. Div., 3d Dep't, 2005)................................................................33-34

Green Harbour Homeowners' Ass'n v. G.H. Dev. & Constr., Inc.,
    763 N.Y.S.2d 114 (App Div., 3d Dep't, 2003).......................................................33

Hall v. Burger King Corp.,
    Civ. No. 89-0260, 1992 WL 372354 (S.D. Fla. Oct. 26, 1992)............................................20

Heckl v. Walsh,
    996 N.Y.S.2d 413 (App. Div., 4th Dep't, 2014)................................................................15

Hemi Grp., LLC v. City of N.Y.,
    559 U.S. 1 (2010)................................................................24-26

Hillman v. City of N.Y.,
    693 N.Y.S.2d 224 (App. Div., 2d Dep't, 1999)................................................................37

Holmes v. Sec. Inv. Prot. Corp.,
    503 U.S. 258 (1992) ................................................................23-25

Icebox-Scoops v. Finanz St. Honore, B.V.,
    676 F. Supp. 2d 100 (E.D.N.Y. 2009)................................................................34

In re Herald,
    730 F.3d 112 (2d Cir. 2013) ................................................................30

In re Hydrogen Peroxide Antitrust Litig.,
    552 F.3d 305 (3d Cir. 2009) ...............................................................11

In re Ins. Brokerage Antitrust Litig.,
    579 F.3d 241 (3d Cir. 2009) ...............................................................12

In re LifeUSA Holding Inc.,
    242 F.3d 136 (3d Cir. 2001) ...............................................................14

Jellison v. Buys-MacGregor-MacNaugton-Green Awalt & Co.,
    No. G87–216 CA6, 1988 WL 108287 (W.D. Mich. Apr. 29, 1988) ................................32-33

JMF Consulting Grp. II, Inc. v. Beverage Marketing USA, Inc.,
    948 N.Y.S.2d 314 (App. Div., 2nd Dep't, 2012) ....................................35

Johnston v. HBO Film Mgmt., Inc.,
    265 F.3d 178 (3d Cir. 2001) ...............................................................14

Julian v. Carroll,
    704 N.Y.S.2d 654 (App. Div., 2d Dep't, 2000) ....................................37

Kelley v. Galveston Autoplex,
    196 F.R.D. 471 (S.D. Tex. 2000) ........................................................19

Klotz v. Trans Union, LLC,
    246 F.R.D. 208 (E.D. Pa. 2007).................................................13, 17-18

Kozma v. Hunter Scott Fin., L.L.C.,
    No. 09–80502–CIV, 2010 WL 724498 (S.D. Fla. Feb. 25, 2010)......................................8-9

Landsman & Funk PC v. Skinder–Strauss Assocs.,
    640 F.3d 72 (3d Cir. 2011) .................................................................10

Lanza v. Merrill Lynch & Co.,
    154 F.3d 56 (2d Cir. 1998) .................................................................18

Lefkowitz v. Appelbaum,
    685 N.Y.S.2d 460 (App. Div., 2d Dep't, 1999)....................................37

Lightning Lube, Inc. v. Witco Corp.,
    4 F.3d 1153 (3d Cir. 1993) .................................................................28

Louros v. Kreicas,
    367 F. Supp. 2d 572 (S.D.N.Y. 2005) .................................................32

Marcial v. Coronet Ins. Co.,
    880 F.2d 954 (7th Cir. 1989) ............................................................................................15

Marcus v. BMW of N. Am., LLC,
    687 F.3d 583 (3d Cir. 2012) ............................................................................................11

Matthews v. Kidder, Peabody & Co., Inc.,
    161 F.3d 156 (3d Cir. 1998) ............................................................................................28

Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,
    547 U.S. 71 (2006) .............................................................................................29-30, 33

Mims v. City of Philadelphia,
    Civ. No. 09-4288, 2010 WL 2077140 (E.D. Pa. May 19, 2010) ...........................................39

MMCT, LLC v. JTR College Point, LLC,
    997 N.Y.S.2d 374 (App. Div, 1ˢᵗ Dep't, 2014) .......................................................................35

Mosaic Caribe, Ltd. v. AllSettled Grp., Inc.,
    985 N.Y.S.2d 33 (App. Div., 1ˢᵗ Dep't, 2014) .......................................................................35

Newton v. Merrill Lynch, Pierce, Fenner & Smith,
    259 F.3d 154 (3d Cir. 2001) ................................................................................ 12, 17, 21

Pundaleeka v. Fid. Brokerage Servs., Inc.,
    No. 97C1304, 1999 WL 412615 (N.D. Ill. May 28, 1999) ....................................................9

Reyes v. Zions First Nat'l Bank,
    Civ. No. 10-345, 2013 WL 5332107 (E.D. Pa. Sep. 23, 2013) ........................................14-15

Roling v. E*Trade Securities LLC,
    860 F. Supp. 2d 1029 (N.D. Cal. 2012)................................................................................34

Rothwell v. Chubb Life Ins. Co. of Am.,
    191 F.R.D. 25 (D.N.H. 1998) ............................................................................................15

Rowe v. Morgan Stanley Dean Witter,
    191 F.R.D. 398 (D.N.J. 1999)............................................................................................32

Rowinski v. Salomon Smith Barney Inc.,
    398 F.3d 294 (3d Cir. 2005) .........................................................................................9, 31

Royal Mile Co., Inc. v. UPMC,
    40 F. Supp. 3d 552 ..........................................................................................................10

Salinas v. United States,
    522 U.S. 52 (1997)...........................................................................................................28

Scarola Ellis LLP v. Padeh,
    984 N.Y.S.2d 56 (App. Div., 1st Dep't, 2014) ................................................................35-36

Schwartz v. Dana Corp./Parish Div.,
    196 F.R.D. 275 (E.D. Pa. 2000) ...........................................................................................20

SEC v. Zandford,
    535 U.S. 813 (2002) .............................................................................................................32

Sedima, S.P.R.L. v. Imrex Co.,
    473 U.S. 479 (1985) .............................................................................................................24

Segal v. Fifth Third Bank, N.A.,
    581 F.3d 305 (6th Cir. 2009) ...............................................................................................31

Semenko v. Wendy's Intern., Inc.,
    No. 2:12–cv–0836, 2013 WL 1568407 (W.D. Pa. Apr. 12, 2013) .......................................10

Smith v. Berg,
    247 F.3d 532 (3d Cir. 2001) ................................................................................................28

Sowell v. Butcher & Singer, Inc.,
    Civ. No. 84-0714, 1987 WL 10712 (E.D. Pa. May 13, 1987) ..............................................18

Spence v. Glock,
    227 F.3d 308 (5th Cir. 2000) ...............................................................................................19

Sprague v. Gen. Motors Corp.,
    133 F.3d 388 (6th Cir. 1998) ...............................................................................................15

Sutton v. Hafner Valuation Group, Inc.,
    982 N.Y.S.2d 185 (App. Div., 3rd Dep't, 2014) ...................................................................35

Thompson v. Merck & Co., Inc.,
    2004 WL 62710 (E.D. Pa. Jan. 6, 2004) ...............................................................................10

Ungar v. Dunkin' Donuts of Am.,
    68 F.R.D. 65 (E.D. Pa. 1975) ...............................................................................................16

Wal-Mart Stores, Inc. v. Dukes,
    131 S. Ct. 2541 (2011) .........................................................................................................12

Wallace v. Powell,
    301 F.R.D. 144 (M.D. Pa. 2014) ......................................................................................21-22

Windham v. Am. Brands, Inc.,
    565 F.2d 59 (4th Cir. 1977) ..................................................................................................18

<u>Woodard v. FedEx Freight E., Inc.</u>,
  250 F.R.D. 178 (M.D. Pa. 2008) ....................................................................................... 10

<u>Yarger v. ING Bank, fsb</u>,
  285 F.R.D. 308, 328 (D. Del. 2012) ................................................................................ 15

## <u>S</u><u>TATUTES</u>

15 U.S.C. § 78bb(f)(1)(A) ............................................................................................... 39

18 U.S.C. § 1962(c) .................................................................................................. 23, 29

18 U.S.C. § 1962(d) ............................................................................................. 23, 28-29

18 U.S.C. § 1964(c) ........................................................................................................ 23

Class Action Fairness Act of 2005, 119 Stat. 4, 28 U.S.C. § 1711 *et seq* ..................... 9

N.Y. Gen. Bus. Law § 349 .......................................................................................... 33-34

N.Y. Civ. Prac. Law & Rules, § 203(g) ......................................................................... 37

N.Y. Civ. Prac. Law & Rules, § 214 .............................................................................. 36

Private Securities Litigation Reform Act of 1995 ("PSLRA"),
  109 Stat. 737, 15 U.S.C. §§77z-1, 78u-4 ............................................. 7, 27, 30, 33

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, <u>et</u> <u>seq</u>..Passim

Securities Exchange Act of 1934 .............................................................................. 30, 33

Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 112 Stat. 3227 ..................... 19

## <u>R</u><u>ULES</u>

Fed. R. Civ. P. 12 .....................................................................................................Passim

Fed. R. Civ. P. 23 .....................................................................................................Passim

Securities and Exchange Commission Rule 10b-5 ......................................................... 30

Defendant, UBS Financial Services Inc., ("UBS FS") submits this memorandum of law in support of its motion to strike the class allegations in, and dismiss the Amended Complaint of Plaintiff, Nicholas Knopick, ("Knopick") pursuant to Fed. R. Civ. P. 12.

## I.    INTRODUCTION

This case is a garden variety disappointed investor claim that can – and should – be heard, if at all, in FINRA arbitration, as required by the agreement between the parties. The gist of Knopick's claim is that he invested with Swiss UBS entities (the "Swiss Entities") (which are not even the defendants here), lost millions of dollars, allegedly because those entities did not follow his investment instructions and ignored his investment goals, and that he is entitled to recover those investment losses from UBS FS, even though UBS FS's only role was referring to the Swiss Entities. In seeking to make that claim, however, Knopick wishes to escape his contractual obligation to arbitrate. In order to avoid arbitration, and perhaps also to coerce a settlement, Knopick has cloaked his basic claim in the complex trappings of racketeering and class action. The Court should not countenance this abuse of the litigation process. All of Knopick's specious claims and allegations must be stricken or dismissed as a matter of law. The Court accordingly should dismiss this action so that the parties can proceed in arbitration, which is where this case belongs.

## II.    STATEMENT OF FACTS

### A.    Knopick's Separate Relationship with the Swiss Entities.

In January of 2007, Knopick contacted UBS FS on an unsolicited basis seeking to open an investment account with its Swiss affiliates. Knopick formalized his relationship with UBS Swiss Financial Advisors ("SFA") on January 23, 2007 with the execution of an "Asset Management Agreement." Am. Compl., ¶ 114; Exhibit "C." As part of that relationship, Knopick claims that, in March or April of 2007, UBS FS introduced him to Andres Knöpfel of

SFA, for the purpose of opening investment accounts with SFA.  Id. at ¶ 77.[1]  SFA is a Swiss corporation with its principal place of business located in Zurich, Switzerland a wholly-owned subsidiary of UBS AG, which also is a foreign corporation, and a duly SEC-registered investment advisor.  Id. at ¶¶ 16-17.  According to Knopick, he was persuaded by SFA's claims of success as an investment advisor, and the recommendations of UBS FS, to open two fiduciary investment accounts with SFA.  Id. at ¶¶ 78, 134.  Knopick further alleges that he carefully explained his investment strategy (blue chip stocks with high dividend yields) to Knöpfel while in the presence of Susan Seifert, his current UBS FS financial consultant.  Id. at ¶¶ 76, 78.

Knopick signed agreements with SFA on January 23, 2007 (as already noted above) and April 3, 2007.  Id. at ¶ 114; Exhibit "C."  Those documents included, among others, an "Asset Management Agreement," which allegedly required SFA to manage Knopick's assets according to his "program specifications" and "Specific Investment Instructions."  Id. at ¶ 131.  Knopick purportedly indicated in other SFA account documentation both his risk tolerance and his investment strategy, as well as his desire to invest in equities.  Id. at ¶¶ 133-135.  Knopick also signed a "Basic Document for Account/Custody Account Relationship," which expressly provided that "[t]he present agreement and/or declaration shall be exclusively governed and construed in accordance with Swiss law," and further specified that "the exclusive place of jurisdiction for any disputes arising out of and in connection with the present Agreement and/or

---

[1]    This Statement of Facts is taken from the Amended Complaint and assumed to be true only for purposes of this motion to dismiss, as required by Rule 12.  UBS FS does not otherwise concede the truth or accuracy of any of it and, in fact, vigorously disputes many of the factual allegations in that pleading.  For example, in the absence of any prior relationship with UBS FS or Seifert, Knopick cold-called the UBS FS Baltimore office to establish the Swiss account relationship.  It was Knopick who inquired of UBS FS about setting up a Swiss account, not the other way around; and it was the relationship with the Swiss entities which was established first, before any account or contractual relationship was established with UBS FS.

declaration shall be Zurich, Switzerland." Id. at ¶¶ 110, 129. This document also authorized SFA to make investments on Knopick's behalf. Id. at ¶ 109, 128. After opening his SFA accounts, Knopick funded the accounts with a wire transfer deposit of more than $12 million from his Wachovia bank account in Pennsylvania to UBS AG in Switzerland, id. at ¶ 78, which funds were then used to purchase securities in Knopick's SFA accounts.

### B. Knopick's Allegations of Wrongdoing.

According to the Amended Complaint, Knopick first learned that his investment instructions and strategy had not been followed when SFA contacted him in September 2008 to inform him that his portfolio might need to be liquidated to pay down his margin loans. Am. Compl. ¶¶ 87, 145; see also Letter of September 12, 2008, attached hereto as Exhibit 1.[2] Knopick alleges, in this regard, that Knöpfel "had leveraged Mr. Knopick's SFA account to purchase volatile securities, and had purchased bonds that paid interest rates at a rate that was lower than the interest rate on the margin loans." Id. at ¶ 87. According to Knopick, Knöpfel subsequently was removed from his job and replaced by Rene Elste. Id. at ¶ 88, 148. As debt and equity markets "melted down" in late 2008, SFA "continued to liquidate Mr. Knopick's portfolio at fire sale prices to satisfy UBS AG's loan repayment requirements." Id. at ¶¶ 90, 149. Knopick further contends that SFA and Elste "dissuaded Mr. Knopick from withdrawing his money promptly, ostensibly to feed UBS AG's appetite for the loan repayments." Id. [3]

---

[2] This letter was attached as an exhibit to Knopick's response to the Motion to Dismiss filed in the pending Middle District action. See Knopick v. UBS AG, M.D.Pa. Civ. No. 14-2090, Dkt. No. 33, Exhibit "R."

[3] This allegation on its face makes no sense, as Knopick's "withdrawing his money" would necessarily have required *full repayment* of his margin loan, thereby *fully satisfying* "UBS AG's appetite" for the loan repayments.

Knopick now claims, *almost seven years later,* that his investment instructions and "time-proven" investment strategy were completely disregarded, that his Swiss accounts were invested "wildly and recklessly" in foreign currencies and "an inexplicable collection" of stocks and bonds in foreign currencies, in a highly leveraged fashion on margin, resulting in the loss of all but about $900,000 of his original $12 million investment. Am. Compl. ¶¶ 85, 90, 149. Though Knopick concedes that he regularly received statements for his SFA accounts, Knopick also now claims that UBS FS "consistently concealed from [him] (1) that his money had been invested against his instructions and (2) that his accounts were excessively leveraged with margin loans from UBS AG secured by his SFA investments." Id. at ¶ 86; see also Letter of September 12, 2008. According to Knopick, Knöpfel and his assistant routinely told Knopick in telephone calls from Switzerland to Pennsylvania and elsewhere in the United States that his investments were performing well. Am. Compl. ¶ 86.

Finally, Knopick asserts that at the time he opened his accounts at SFA, it was never disclosed to him that SFA and its parent, UBS AG, were under investigation for a cross-border tax evasion scheme, and that his account was created "as a cover for, and in furtherance of, that scheme." Id. Knopick claims that if he had known all of that, he would not have opened investment accounts with SFA. Id. at ¶ 152. In sum, Knopick alleges that agents of SFA "fraudulently and deceitfully conspired to and did lose or steal approximately $12,000,000.00 from Plaintiff's Swiss accounts … and then conspired with … UBS FS to conceal a theft, loss and fraud from Plaintiff for approximately five years." Id. at ¶ 95. The Amended Complaint is silent, however, on what exactly UBS FS did or did not do in furtherance of that conspiracy, or

why Knopick continues to maintain multi-million dollar accounts with UBS FS notwithstanding that alleged conspiracy.[4]

Knopick does not contend that any of the losses he sustained occurred at UBS FS. He does not allege that UBS FS or Seifert had any involvement in the trading activity in his Swiss accounts, or that they even knew how he invested in his Swiss accounts. Although Knopick's pleading is replete with references to "a massive tax fraud scheme" purportedly orchestrated by the Swiss UBS entities,[5] nowhere does Knopick allege that the investments he made in Switzerland, and which produced the alleged investment losses he now claims, were part and parcel of, or caused by, any such tax fraud scheme. Nor does he allege these Swiss investments were otherwise illegal.

**C.      Knopick's Class Action Allegations.**

Knopick purports to bring this case as a class action, insisting that "members of the class" were victims of the same fraud and deceit. He claims, with no factual support whatsoever: (1) that their investment strategies were explained to UBS FS brokers; (2) that those instructions were "similarly disregarded"; (3) that SFA was "never authorized by members of the class to deviate from their investment strategies"; and (4) that UBS FS owed "a duty to ensure

---

[4]     In late 2014, after he had commenced suit against UBS FS for the wrongdoing he now claims, Knopick, in fact, added approximately $11,551,612.58 to his UBS FS accounts by transferring cash, securities and a substantial $7,476,176.90 margin loan from another U.S. brokerage firm. See Statements for Account No. xxxx691 for Oct. 2014, Nov. 2014, attached as Exhibit "2"; and Statements for Account No. xxxxxx667 for Oct. 2014, Nov. 2014, attached as Exhibit "3."

[5]     This includes copying and pasting into his Amended Complaint the entire federal indictment describing this alleged scheme. Compare Am. Compl. ¶¶ 23-24, 26-29, 31-37, 40, 42, 43, 45, 46, 48, 50-52, 57, 58, 60, 62-64, with U.S. v. UBS AG, No.: 09-cr-60033-JIC, Dkt. 4, ¶¶ 2-9, 11-20, 22-36, 38-42 (S.D. Fla. Feb. 18, 2009); U.S. v. Weil, No. 0:08-60322-JIC, Dkt. 3, ¶¶ 2-4, 6-10, 12-19, 22-36, 38-42 (S.D. Fla. Feb. 12, 2008). The federal indictment *does not once* mention UBS FS.

that SFA made investment decisions suitable and appropriate for them and consistent with their investment objectives and goals" and that by disseminating false information and concealment it violated that duty to him. Id. ¶¶ 185-189, 190-193.

### D. Procedural History.

Knopick commenced this action by filing a putative class action complaint on October 1, 2014. The next day, October 2, 2014, Knopick also filed a class action complaint against UBS AG, UBS SFA, and Rene Elste in the Court of Common Pleas of Dauphin County. That action was removed to the United States District Court for the Middle District of Pennsylvania on October 30, 2014, where the case is pending as of this writing. See Knopick v. UBS AG, M.D.Pa. Civ. No. 14-2090 (Kane, J.). UBS FS and Seifert moved to dismiss the original complaint on December 19, 2014. On February 19, 2015, Plaintiff filed an Amended Complaint, and UBS FS now again moves to dismiss. Knopick voluntarily dismissed Seifert as a defendant in this action on March 11, 2015, and as a consequence this motion is filed on behalf of the lone remaining defendant, UBS FS. See Dkt. No. 19. This motion also follows interim proceedings concerning venue issues. See Dkt. Nos. 18; 20-21; 23, 25; 29-30.[6]

## III.   ARGUMENT

Knopick's Amended Complaint must be dismissed or stricken in its entirety. Knopick's class action allegations must be stricken because they fail completely on the face of the Amended Complaint to satisfy Rule 23. It is obvious from the pleading, itself, that this action cannot satisfy the interrelated predominance and commonality requirements, that Knopick cannot show class treatment is superior to individual actions, that he does not typify the class and

---

[6]   On August 27, 2014, over a month before commencing this action, Knopick filed a FINRA Statement of Claim against UBS FS and Seifert which was substantively identical to the original complaint. See Am. Compl. ¶ 106. That action has been stayed by agreement of the parties pending the outcome of this action.

is not an adequate class representative, and that the class cannot be ascertained. See Carrera v. Bayer Corp., 727 F.3d 300, 306 (3d Cir. 2013). Knopick's RICO claims must be dismissed because he lacks RICO standing, because the only alleged wrongdoing with any causal connection to his alleged losses are federal securities law violations which, under the Private Securities Litigation Reform Act ("PSLRA"), cannot serve as RICO predicate acts, and because he fails to plausibly allege a RICO conspiracy.

In the absence of viable Rule 23 or RICO claims, this Court lacks subject matter jurisdiction over Knopick's state law claims, which are barred by the Securities Litigation Uniform Standards Act ("SLUSA") in any event. And even if they were not, his New York statutory claim fails because the alleged harm is not "consumer oriented,"[7] his state common law claims merely duplicate his breach of contract claim, his negligence-based claims are time-barred under New York law, and his unjust enrichment claim is barred because the parties have a valid, binding contract.

### A. Knopick's Class Action Allegations Must Be Stricken.

As explained by the U.S. Supreme Court, "[t]he class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" Gen. Tel. Co. v. Falcon, 457 U.S. 147, 155 (1982) (quoting Califano v. Yamasaki, 442 U.S. 682, 700-701 (1979)). Indeed, "[c]lass relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'" Id. (quoting Califano, 442

---

[7]     Knopick's Pennsylvania statutory claim also fails for the simple reason that his claims are governed solely by New York law pursuant to his agreement with UBS FS. See Am. Compl. at Exhibit A, p. 20 ("This Agreement, its enforcement and the relationship between you and UBS Financial Services shall be governed by the laws of the State of New York, ... without giving effect to the choice of law or conflict of laws provisions thereof ....").

U.S. at 700-701). Under those circumstances, "'the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.'" Id. (quoting Califano, 442 U.S. at 700-701).

This case is the complete antithesis of these principles. Even a cursory review of the allegations in the Amended Complaint demonstrates that it cannot be brought as a class action because of the individualized issues that exist here. As this Court has already recognized, Knopick's claim is one of investment fraud and mismanagement, by his specific investment advisor, Knöpfel, based on alleged misrepresentations and omissions made in oral communications to him, and for alleged losses that are specific to his investments because Knöpfel disregarded "Knopick's investment strategy for the Swiss Accounts by investing wildly and recklessly, trading Knopick's money into foreign currencies and purchasing an 'inexplicable collection' of stocks and bonds in foreign currencies." See Mem. Op., 4/14/15, at 2 (Dkt. no. 29); see, e.g., Am. Compl. ¶¶ 86, 175-182. There simply is no way that the Court could address these and other highly individualized allegations, which are unique to Knopick and the handling of his account, on a class-wide basis without delving into the particulars of each and every account for the alleged thousands of class members. As such this case would be unwieldy, outrageously expensive, time-consuming, and completely unmanageable as a class action.

The Court has also already raised Rule 23 concerns in this action. See Mem. Op., 4/14/15, at 4 n.3 (Dkt. No. 29) ("Bearing this burden in mind, parties should plead as class actions only those claims for which there is adequate factual support. This label is not designed to facilitate the circumvention of pre-dispute agreements or to achieve strategic purposes not contemplated by Federal Rule of Civil Procedure 23."); see also Kozma v. Hunter Scott Fin.,

L.L.C., No. 09–80502–CIV, 2010 WL 724498, at *2-3 (S.D. Fla. Feb. 25, 2010) (granting defendants' motion to dismiss Rule 23 claim where defendants asserted that plaintiff "added the Rule 23 class action claims in a transparent attempt to avoid arbitration"); Pundaleeka v. Fid. Brokerage Servs., Inc., No. 97C1304, 1999 WL 412615, at *3 (N.D. Ill. May 28, 1999) (stating that even if it had jurisdiction, court would not have certified the class because, among other things, plaintiffs brought the class action in an attempt to avoid arbitration under their contract). Congress, in fact, enacted a number of major statutory changes designed specifically to correct such abuse.  See generally Class Action Fairness Act of 2005, 119 Stat. 4, 28 U.S.C. § 1711 et seq; see also Private Securities Litigation Reform Act of 1995, 109 Stat. 737, 15 U.S.C. §§ 77z-1, 78u-4; Securities Litigation Uniform Standards Act of 1998, 112 Stat. 3227; Rowinski v. Salomon Smith Barney Inc., 398 F.3d 294 (3d Cir. 2005).

It is apparent from the facial weaknesses in Plaintiff's class allegations that this is one of those claims—brought as a class action in order (1) to avoid arbitration,[8] (2) cause UBS FS substantial burden and expense, and (3) coerce a substantial settlement from Defendant.  The Court should not countenance Knopick's abuse of the class action mechanism or the federal judicial system for this improper purpose.  For at least the following reasons, the Court should strike Knopick's class action allegations so that the parties can proceed in arbitration where the parties have already agreed by contract any individual claims Knopick may have against UBS FS belong.

1.   __The Class Action Principles That Apply Here.__

A court may, in its discretion, "strike from a pleading … any redundant,

---

[8]   The reason Knopick brings his claims as a putative class action is obvious.  As the Court is already aware, Knopick concedes that there is no substantive difference between the claims he has asserted in this case and in his companion FINRA arbitration.

immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In order to survive a motion to strike class action allegations, the plaintiff bears the burden of making a prima facie showing that the class action requirements of Rule 23 are satisfied. See Royal Mile Co., Inc. v. UPMC, 40 F. Supp. 3d 552, 578-579 (W.D. Pa. 2014) ("[R]egardless whether the defendant files a motion to strike class allegations pursuant to Federal Rule of Civil Procedure 12(f) based upon insufficient class allegations in a complaint, or a plaintiff files a motion to certify a class pursuant to Rule 23 based upon a more fully developed record, the plaintiff has the burden to prove that the requirements set forth in Rule 23 are met, and the court must accordingly apply Rule 23.").Courts in this Circuit have not hesitated to strike class action allegations at the pleadings stage "where the complaint and any affidavits clearly demonstrate that the plaintiff cannot meet the requirements for a class action." Woodard v. FedEx Freight E., Inc., 250 F.R.D. 178, 182 (M.D. Pa. 2008); see, e.g., Thompson v. Merck & Co., Inc., 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004) (granting motion to strike class action allegations before class action proceedings and without class discovery); Semenko v. Wendy's Int'l., Inc., No. 2:12–cv–0836, 2013 WL 1568407 (W.D. Pa. Apr. 12, 2013) (striking class action allegations); see also Landsman & Funk PC v. Skinder–Strauss Assocs., 640 F.3d 72, 93 n.30 (3d Cir. 2011) (explaining that a court may grant a motion to strike class allegations prior to discovery "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met").

 As this Court explained in its April 14, 2015 ruling in this case, there are stringent requirements that must be met to maintain a class action under Rule 23:

> "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013). "To invoke this exception, every putative class action must satisfy the

four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." <u>Marcus v. BMW of N. Am., LLC</u>, 687 F.3d 583, 590 (3d Cir. 2012). "The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." <u>Id.</u> (citing <u>In re Hydrogen Peroxide Antitrust Litig.</u>, 552 F.3d 305, 307 (3d Cir. 2009)). The Court must rigorously analyze the evidence supporting class certification and, only after this intensive probe, may certification be proper. <u>Comcast Corp.</u>, 133 S. Ct. at 1432.

Mem. Op., 4/14/15, at 4 n.3 (Dkt. no. 29). Among other things, a plaintiff must plausibly allege and prove that:

> (1) the class is so numerous that joinder of all members is impracticable;

> (2) there are questions of law and fact common to the class;

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a). The Court must also determine whether one of the three types of classes listed in Rule 23(b) could be certified. <u>In re Hydrogen Peroxide Antitrust Litig.</u>, 552 F.3d 305, 309 (3d Cir. 2009).Plaintiff brings his putative class action under Rule 23(b)(3), which states that a class may be maintained only if the Rule 23(a) elements are satisfied *and*:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Even accepting Knopick's allegations as true, a class never could be certified here because the allegations and issues involved are far too individualized to be resolved on a class-wide basis and, accordingly, must be stricken under Rule 12(f).

### 2. Knopick's Proposed Class Does Not Satisfy the Rule 23 Requirements of Predominance and Commonality.

The predominance standard under Rule 23 demands "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). A plaintiff seeking certification therefore must prove that "[i]ssues common to the class must predominate over individual issues, and the class action device must be superior to other means of handling the litigation." Newton v. Merrill Lynch, Pierce, Fenner & Smith, 259 F.3d 154, 186-87 (3d Cir. 2001). Indeed, "[p]redominance measures whether the class is sufficiently cohesive to warrant certification." Id. at 187 (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997)).

Commonality similarly requires a plaintiff to show that the class members "have suffered the same injury." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011). "[W]hat matters to class certification … is not the raising of common questions … but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." Id. Due to their similarity, courts "consider the Rule 23(a) commonality requirement to be incorporated into the more stringent Rule 23(b)(3) predominance requirement, and therefore deem it appropriate to 'analyze the two factors together, with particular focus on the predominance requirement.'" In re Ins. Brokerage Antitrust Litig., 579 F.3d 241, 266 (3d Cir. 2009). Knopick's proposed class cannot, as a matter of law, satisfy the predominance or commonality elements of Rule 23 because the claims alleged in the Amended Complaint are rife with individual issues that, as a matter of law, cannot be determined on a classwide basis.

First, as the Court has previously recognized, the crux of Knopick's claim, and therefore that of the class he purports to represent, is that Knöpfel ignored Knopick's specific instructions and investment objectives and mismanaged the investments in Knopick's individual

accounts.  See Mem. Op., 4/14/15, at 2 (Dkt. no. 29); see also Am. Compl. at ¶¶ 185-187, 201, 220.  But the nature of Knopick's unique investment objectives and instructions (as well as those of every one of the thousands of alleged putative class members), whether the putative class members gave, or were understood to have given, the same objectives and instructions, the extent to which those objectives and instructions were or were not followed, and how any of that caused an investment loss present questions that the Court cannot address on a classwide basis.  Rather, the Court would have to address these fact-intensive issues on an individual basis for every single class member.

To determine if each class member has a meritorious claim, the Court would have to delve into the particulars of each individual investor's account, to determine, for example, what each investor's investment objectives and instructions actually were, and compare those with the investments made in each account.  The Court also would have to decipher who, as between that class member and SFA, made the actual investment decisions.  This process would require the Court, at a minimum, to examine the underlying documentation for each class member's account, take each class member's testimony, and take testimony from the SFA employee(s) who serviced that class member's account.  This sort of particularized inquiry, and the countless hours of discovery, document review and depositions that would be part of it, is the very antithesis of what the class action rules were designed to accomplish.  See, e.g., Klotz v. Trans Union, LLC, 246 F.R.D. 208, 216-217 (E.D. Pa. 2007) (refusing to certify a class where "[d]etermining the defendant's liability on any of the class members' claims [would have] require[d] a case-by-case assessment").

Equally fatal to Knopick's claims, and those of the class, is the fact that the allegedly false representations or omissions were made to Knopick and the putative class

members in *individual oral* communications with UBS FS and SFA representatives. See, e.g., Am. Compl. at ¶ 160(c) (alleging class action is founded on "[w]hether UBS FS and its employees made false and misleading statements to US customers"). It is well-settled in this Circuit that "an action based substantially on oral rather than written communications is inappropriate for treatment as a class action" because of the individualized inquiry that would be required into what was said or not said to each class member. Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 190 (3d Cir. 2001). As the Third Circuit explained in Johnston, when a class action is based on oral communications, the court must make highly individualized inquiries into the "content of the individual representations" and whether or to what extent the representations contributed to the alleged harm. See id. at 191. This is particularly true where, as here, the alleged misrepresentations "were not standard or scripted but were oral and varied." Id. In such circumstances, the court simply cannot conclude "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Id. (quoting Fed. R. Civ. P. 23(b)(3)).

Any attempt to certify a class based upon oral misrepresentations or omissions made to individual class members in oral communications would obviously fail because it would require the Court to analyze the unique and individual communications each class member had with UBS FS or SFA. See In re LifeUSA Holding Inc., 242 F.3d 136, 144 (3d Cir. 2001) (denying class certification because the predominance requirement was not met when plaintiffs' claim arose out of oral representations made to "over 280,000 purchasers by over 30,000 independent agents [and] the sales presentations ... were neither uniform nor scripted"); Reyes v. Zions First Nat'l Bank, Civ. No. 10-345, 2013 WL 5332107, at *7-8 (E.D. Pa. Sep. 23, 2013)

(refusing to certify class where action depended on practices and oral representations made by telemarketers to plaintiffs that they allegedly relied upon).[9]

The adjudication of Knopick's claims, and those of the class, also would require the Court to determine the element of reasonable reliance on an individual basis. See, e.g., Heckl v. Walsh, 996 N.Y.S.2d 413, 416 (App. Div., 4th Dep't, 2014) (citation omitted) (articulating that a fraud claim requires the plaintiff to prove the defendant made a materially false representation with intent to deceive the plaintiff, and that the plaintiff believed and justifiably relied on the misrepresentation). There is no mechanism available whereby reliance could be determined on a classwide basis here, given that what each putative class member knew or should have known is inherently an individualized issue. See Yarger v. ING Bank, fsb, 285 F.R.D. 308, 328 (D. Del. 2012) ("Because reliance is a central question that goes to the heart of the merits of the Proposed Class's fraud claims and must be proven through individualized evidence, the predominance requirement is not met with respect to the fraud claims."). Further, each class member would have to prove that he or she *justifiably* relied on the allegedly false

_____

[9] Federal courts across the country have joined the Third Circuit in concluding that class actions based predominantly on claims of oral misrepresentations are inappropriate. See, e.g., Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 341 (4th Cir. 1998) (holding that fraud claims "based substantially on oral rather than written communications are inappropriate for treatment as class actions unless the communications are shown to be standardized") (internal quotation marks omitted); Sprague v. Gen. Motors Corp., 133 F.3d 388, 399 (6th Cir. 1998) ("The district court took testimony from more than three hundred class members in an effort to obtain a purportedly representative sample of the representations and communications by GM. That it was necessary to do so strongly suggests to us that class-wide relief was improper."); Marcial v. Coronet Ins. Co., 880 F.2d 954, 957-958 (7th Cir. 1989) (holding that issues specific to each plaintiff predominated because the major issue in contention – whether the insurance company had fraudulently informed the plaintiffs that they could only recover under an insurance policy if they submitted to a polygraph test – depended upon evidence of the individual oral communications between the defendant and each plaintiff); Rothwell v. Chubb Life Ins. Co. of Am., 191 F.R.D. 25, 30 (D.N.H. 1998) ("[M]ost courts hold that certification is not appropriate when the plaintiffs' claims are based on oral representations, which, by their nature, tend to be particularized.").

statements made. Courts in the Third Circuit have routinely held the need for proof of reliance renders cases like this one not conducive to class treatment. See Glover v. Udren, Civ. No. 08-990, 2013 WL 6237990, at *21 (W.D. Pa. Dec. 3, 2013) (refusing to certify class action for Pennsylvania Consumer Protection Law claims because the claim requires an individualized finding respecting each plaintiff's justifiable reliance); Gavron v. Blinder Robinson & Co., 115 F.R.D. 318, 325 (E.D. Pa. 1987) (quoting Ungar v. Dunkin' Donuts of Am., 68 F.R.D. 65 (E.D. Pa. 1975)) (a claim of common law fraud "raises numerous issues which are personal to each plaintiff and are, therefore, uncommon to the class as a whole."); Gaffin v. Teledyne, Inc., 611 A.2d 467, 474 (Del. 1992) ("A class action may not be maintained in a purely common law fraud case since individual questions of law or fact, particularly as to the element of justifiable reliance, will inevitably predominate over common questions of law or fact.").

Similarly, there is no means, based on the allegations in the Amended Complaint, by which the Court could determine the amount of damages that should be awarded to each class member on a classwide basis. See Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1433 (2013) (concluding that "[q]uestions of individual damages will inevitably overwhelm questions common to the class" where respondents' model to measure damages falls "short of establishing that damages are capable of measurement on a classwide basis"). To prove damages, it is not enough for the class members merely to show that they were fraudulently induced into opening accounts with UBS SFA, and subsequently lost money in those accounts. Rather, they must prove that the alleged losses they sustained were *proximately caused* by the purportedly fraudulent statements or omissions. The Third Circuit has made this point clear:

> To prove loss causation, the plaintiff must demonstrate that the fraudulent misrepresentation actually caused the loss suffered... Thus, [t]he loss causation inquiry typically examines how directly the subject of the fraudulent statement caused the loss, and whether

the resulting loss was a foreseeable outcome of the fraudulent statement…. [T]he loss causation element requires the plaintiff to prove that it was the very facts about which the defendant lied which caused its injuries… [Therefore,] a plaintiff does not meet the loss causation element if he fails to prove that the drop in the value of a security is related to the alleged misrepresentation. In that situation, it cannot be said that the alleged misrepresentation proximately caused the decline in the security's value to satisfy the element of loss causation.

Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 222-223 (3d Cir. 2006) (internal quotation marks and citations omitted).

In Berckeley, the plaintiff asserted, in conclusory fashion, that his shares lost value as a proximate cause of defendant's alleged misrepresentation. Like Knopick, the plaintiff in Berckeley set forth "absolutely no connection between the price decrease in [the] shares and [defendant's] unrelated alleged misrepresentation." Id. at 223. Accordingly, the Third Circuit concluded that the plaintiff "failed to set forth sufficient facts that the precipitous loss in value in his … share holdings was proximately caused by [defendant's] alleged misrepresentation." Id. at 224.

This is especially critical in purported class actions, where, as here, members may have experienced losses for reasons that were totally unrelated to any allegedly fraudulent statements or omissions, such as the downturn in the markets as a whole or a decline in particular holdings due to market forces. See Newton, 259 F.3d at 181 (classwide injury could not be presumed because the economic loss to each class member depended on the individualized facts of each transaction). Further to this point, it is likely that there are putative class members who actually *profited* from their investments. These individuals, of course, do not have a cognizable claim. Therefore, a class cannot be certified because the Court would have to conduct an extensive, fact-specific, and complicated inquiry to determine if a class member sustained damages proximately caused by the alleged fraudulent statements or omissions. See Klotz, 246

F.R.D. at 216-217, supra pp. 13-14; see also Windham v. Am. Brands, Inc., 565 F.2d 59, 68 (4th Cir. 1977) ("[W]here the issue of damages … requires separate mini-trials of an overwhelmingly large number of individual claims, courts have found that the staggering problems of logistics thus created make the damage aspect of the case predominate and render the case unmanageable as a class action." (internal quotations and citations omitted)).

Finally, Knopick's attempt to invoke the doctrine of equitable tolling also renders this case unsuitable for class action treatment. Knopick contends in his amended pleading that the statute of limitations should be tolled because certain UBS entities intentionally concealed material information from him and the class members. See Am. Compl. ¶ 168. Proving that to be the case, however, would require a fact-intensive inquiry into each member's relationship with the various UBS entities because it depends on the specific circumstances of each class member – namely, what they knew or should have known through reasonable diligence at particular points in time. See Corcoran v. N.Y. Power Auth., 202 F.3d 530, 543 (2d Cir. 1999) (quoting Lanza v. Merrill Lynch & Co., 154 F.3d 56, 60 (2d Cir. 1998)) (explaining that a statute of limitations may be tolled due to fraudulent concealment if the plaintiff shows the defendant wrongfully concealed material facts, the concealment prevented the plaintiff's discovery of the nature of his claim, and plaintiff exercised due diligence); Sowell v. Butcher & Singer, Inc., Civ. No. 84-0714, 1987 WL 10712, at *5 (E.D. Pa. May 13, 1987) ("Under the federal equitable tolling doctrine, the limitations period does not begin to run until plaintiffs knew or should have known of the alleged fraud.").

As other federal courts have found, determining whether there was fraudulent concealment requires an inquiry into the circumstances of each transaction, making it unsuitable for treatment on a classwide basis. See, e.g. Broussard v. Meineke Disc. Muffler Shops, Inc.,

155 F.3d 331, 342 (4th Cir. 1998) (equitable tolling depends on individualized showings that are non-typical and unique to each purported class member); <u>Kelley v. Galveston Autoplex</u>, 196 F.R.D. 471, 478 (S.D. Tex. 2000) (rejecting equitable tolling doctrine for class action because "[d]etermining whether there was fraudulent concealment … requires an inquiry into the circumstances of each case").  Because equitable tolling in this case requires an individualized inquiry, it is not appropriate for class action.

Choice of law is yet another reason why the putative class Knopick seeks to represent cannot be certified as a matter of law.  The putative class purports to consist of over 3,000 members spread throughout the country asserting a wide range of statutory and common law claims.  <u>See, e.g.</u>, <u>Spence v. Glock</u>, 227 F.3d 308, 312-15 (5th Cir. 2000) (denying class certification for class action involving defective firearms because it implicated tort laws of all 51 jurisdictions of the United States); <u>see also</u> <u>Bobbitt v. Milberg, LLP</u>, 285 F.R.D. 424, 434 (D. Ariz. 2012) ("Where the laws of all fifty states are implicated and there are unresolved conflicts of law … courts have found that Rule 23(b)(3) is not satisfied and have denied class certification.").

In sum, Knopick's class action allegations would require a determination of several highly particularized issues that cannot be addressed on a classwide basis without hopelessly bogging down the parties and the Court in broad discovery and a series of impermissible mini-trials.  Even accepting Knopick's allegations as true, a class action is not sustainable on the types of investment loss claims Knopick attempts to bring, because individual issues are certain to predominate over any questions that could pertain to the class as a whole, and there is insufficient commonality among the claims of the class members.

**3.    A Class Action is Not a Superior Method for Resolving
the Purported Claims of the Putative Class Members.**

Before certifying a class under Rule 23(b)(3), a court also must find "all other methods of resolving the issues in a case to be inferior to a class action." Schwartz v. Dana Corp./Parish Div., 196 F.R.D. 275, 285 (E.D. Pa. 2000). Given the individualized issues presented by Knopick's proposed class, a class action is not superior. Individual plaintiff cases, to the extent that they are pursued, could be resolved more quickly than a class action.

As explained above, the administration of the class that Plaintiff would seek to certify, as well as the discovery and trial proceedings that would be needed to resolve the class claims, is incomprehensibly staggering in terms of breadth and scope. There is no way the Court could adjudicate the claims of the class without first permitting discovery that would be unprecedented in scale. Each of the over 3,000 alleged class members would have to be deposed, as would numerous UBS FS and SFA employees. Documents, numbering in the millions, also would have to be produced by the individual class members, UBS FS, and various non-parties. After the completion of this discovery, the court would have to face the daunting task of holding a trial that addressed the claims of each and every class member. Courts confronted with obstacles far less steep than these have found that a class action was not superior. See, e.g., Hall v. Burger King Corp., Civ. No. 89-0260, 1992 WL 372354, at *1, 14 (S.D. Fla. Oct. 26, 1992) (discrimination class action brought by 24 franchisees against franchisor did not satisfy Rule 23(b)(3) in part because of "the countless difficulties sure to be encountered in the management of a class action" due to "the highly individual nature of the proof involved [in each franchisee's claim.]"); Barone v. Gerber Prods. Co., Civ. No. 90-2571, 1990 WL 157401, at *1 (E.D. Pa. Oct. 11, 1990) (management of class action claiming baby bottle manufacturers' failure to warn class members that feeding a bottle to a baby while

sleeping could cause tooth decay was not feasible due to (1) different beverages drunk by class members; (2) different treatment by medical professionals; and (3) different congenital problems of class members); see also Newton, 259 F.3d at 191 (affirming district court's holding that class did not satisfy Rule 23(b)(3) and agreeing with district court that review of each individual class member's stock transactions with the defendant would be "a mind-boggling undertaking").

Further, while Knopick claims that class relief is superior because the damages suffered by him and the class members is "relatively small," Am. Compl. ¶ 165, his own claim that he lost in excess of $11 million shows quite the opposite. See Am. Compl. ¶ 90. And if one were to assume Knopick is typical of the class, class relief would not be superior to individual relief. See Forman v. Data Transfer, Inc., 164 F.R.D. 400, 404 (E.D. Pa. 1995) ("Class actions are a superior method of adjudication where a large number of plaintiffs may have been injured, but not to an extent to induce the instigation of individual litigation."). Each individual would be adequately incentivized to bring his or her own individual claims.

### 4. Knopick is Not an Adequate Class Representative, Nor are His claims Typical of the Class.

The typicality requirement mandates that "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This "inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." Georgine v. Amchem Prods, Inc., 83 F.3d 610, 631 (3d Cir. 1996). The "adequacy inquiry considers whether the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." Wallace v. Powell, 301 F.R.D.

144, 156 (M.D. Pa. 2014) (citations and quotations omitted). "[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." <u>Dewey v. Volkswagen Aktiengesellschaft</u>, 681 F.3d 170, 183 (3d Cir. 2012).

Knopick is not an adequate class representative. As set forth above, there are a myriad of unique issues and defenses that Knopick may be subject to, including that he cannot equitably toll the statute of limitations. <u>See</u> <u>Beck v. Maximus, Inc.</u>, 457 F.3d 291, 301 (3d Cir. 2006) ("A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation."). As just one example, Plaintiff attached to his pleadings in the action he has pending in the Middle District of Pennsylvania against SFA and others a letter from SFA dated September 12, 2008, which shows that contrary to his allegations in this case, Plaintiff was well aware that his accounts were on margin and that UBS proposed alternatives to him that would have permitted him to satisfy his margin obligations. (<u>See</u> Letter of September 12, 2008, attached hereto as Exhibit 1.) Given these issues, Knopick is neither typical of the class he seeks to represent; nor is he adequate to serve as the class representative.

### 5.     The Putative Class is Not Ascertainable.

Finally, "a plaintiff must show, by a preponderance of the evidence, that the class is 'currently and readily ascertainable based on objective criteria,' and a trial court must undertake a rigorous analysis of the evidence to determine if the standard is met." <u>Carrera v. Bayer Corp.</u>, 727 F.3d 300, 306 (3d Cir. 2013). A "critical need" of the court in determining whether to certify a class is "'to determine how the case will be tried,' including how the class is to be ascertained." <u>Id.</u> "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." <u>Id.</u> at 305.

Knopick proffers a class of all those persons who were referred to certain Swiss

UBS entities for banking or financial services over a ten year period from 2000 to 2010.  See

Am. Compl. ¶ 156.  But he does not define what constitutes a "referral."  He also does not, and

could not, establish a concrete method for how these "referred" individuals might be identified.

There simply is no way to determine who the putative class members are without an

individualized mini-trial for each supposed class member that would be conducted to determine

if each class member had communications that constituted a "referral," that included the false

and fraudulent representations that Knopick claims were made and that sustained a compensable

loss caused by such alleged wrongdoing.

**B.** **The RICO Claims Should Be Dismissed.**

In Counts VIII and IX of the Amended Complaint, Knopick asserts claims against

UBS FS pursuant to 18 U.S.C. § 1964(c) for purported violations of sections 1962(c) and

1962(d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961,

et seq.  The Court should dismiss his RICO claims because: (1) Knopick lacks standing under

RICO because he has not alleged that the predicate acts were the direct, proximate cause of his

alleged injuries; (2) Knopick's RICO claims seek to utilize alleged securities fraud as a

"predicate act" in violation of the Private Securities Litigation Reform Act; and (3) no actionable

RICO conspiracy exists because he cannot establish an underlying RICO violation.

**1.** **Knopick Lacks Standing Because the Alleged RICO Violations**
**Are Not the Proximate Cause of His Alleged Harm.**

In order to have standing to bring a claim under § 1962(c), Knopick must allege

that the purported RICO violations proximately caused an injury to his business or property.  See

18 U.S.C. § 1964(c); Holmes v. Sec. Inv. Prot. Corp., 503 U.S. 258, 267-68 (1992); see also

Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457 (2006).  If a plaintiff does not have standing

to assert a RICO claim, the claim must be dismissed. See Allegheny Gen. Hosp. v. Phillip Morris, Inc., 228 F.3d 429, 435 (3d Cir. 2000).

In Anza, the Supreme Court addressed RICO's proximate cause requirement at length and recognized that "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led *directly* to the plaintiff's injuries." Anza, 547 U.S. at 461 (emphasis added). Plaintiff, a competitor of the defendant, alleged that its business was injured when the defendant wrongfully avoided paying New York state sales tax through a scheme to defraud state taxing authorities. Id. at 457. The plaintiff's causation theory in Anza was that the defendant had an unfair competitive advantage over the plaintiff because it was not charging sales tax to its customers. Id. at 457-458. The Court rejected this theory as a matter of law, explaining that the alleged racketeering activity did not proximately cause the plaintiff's claimed injuries:

> The proper referent of the proximate-cause analysis is an alleged practice of conducting National's business through a pattern of defrauding the State. To be sure, Ideal asserts it suffered its own harms when the Anzas failed to charge customers for the applicable sales tax. *The cause of Ideal's asserted harms, however, is a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State).* The attenuation between the plaintiff's harms and the claimed RICO violation arises from a different source in this case than in Holmes, where the alleged violations were linked to the asserted harms only through the broker-dealers' inability to meet their financial obligations. Nevertheless, the absence of proximate causation is equally clear in both cases.

Id. at 458 (emphasis added).

Since Anza, the Supreme Court has reaffirmed that the "the compensable injury flowing from a [RICO] violation … 'necessarily is the harm caused by [the] predicate acts.'" Hemi Grp., LLC v. City of N.Y., 559 U.S. 1, 13 (2010) (citing Anza, 547 U.S. at 457 (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 497 (1985))). It is not sufficient to allege that the

predicate acts were a "but for" cause of the claimed injury.  <u>Holmes</u>, 503 U.S. at 268.  Indeed,

any theory of causation that requires the court to move "well beyond the first step" to determine

proximate cause is too indirect and "cannot meet RICO's direct relationship requirement."  <u>Hemi</u>

<u>Grp., LLC</u>, 559 U.S. at 10.  Furthermore, merely alleging, without supporting factual allegations,

that the purported predicate acts directly caused the harm to the plaintiffs is insufficient because

"that assertion is a legal conclusion about proximate cause."  <u>Id.</u> at 992.  Although the Court "has

interpreted RICO broadly," it has "also held that its reach is limited by the 'requirement of a

direct causal connection' between the predicate wrong and the harm."  <u>Id.</u> at 994 (quoting <u>Anza</u>,

547 U.S. at 460).

The predicate acts alleged by Knopick in this case are mail fraud and wire fraud.

<u>See</u> Am. Compl. ¶¶ 244-245.  Though Knopick asserts in conclusory fashion that these predicate

acts proximately caused damage to his business and property and that of the other class

members, <u>see id.</u> at ¶ 246, he alleges absolutely no facts to suggest any causal link, let alone the

requisite direct connection under <u>Anza</u>, between the alleged predicate acts and the resulting

losses in his investment account that he now seeks to recover.  Indeed, the RICO claims do not

even purport to describe the harm allegedly caused by the predicate acts or that a pattern of

racketeering activity caused his damages.

The pattern of racketeering activity that Knopick alleges directly caused him

injury was a tax scheme to defraud the federal government orchestrated by Swiss entities and

others.  <u>See</u> Am. Compl. ¶¶ 250; 253.[10]  Indeed, in support of his RICO Counts, Knopick alleges:

> UBS AG, UBS FS, UBS SFA, and their agents engaged in
> unlawful conduct by using the UBS Enterprise to further a
> fraudulent scheme of conspiring to defraud the U.S. through tax

---

[10]  Alternatively, if Knopick claims that his losses were caused by investment fraud, his claims
are barred by the Private Securities Litigation Reform Act.  <u>See</u> <u>infra</u> § III(B)(2).

> fraud and by causing false and misleading information to be
> disseminated to account holders, all by mail, email interstate wires
> and interstate carriers regarding the investors' accounts.

See Am. Compl. ¶ 242 (emphasis added).  He devotes 18 pages and 54 paragraphs of his

pleading to this topic, under the heading "UBS AG's Conspiracy to Defraud the U.S.," before he

even begins any substantive discussion of what happened respecting his own accounts.  See Am.

Compl. ¶¶ 21-75.  The Amended Complaint is replete with allegations that the unlawful scheme

in which UBS AG engaged was to defraud U.S. taxing authorities.  See, e.g., Am. Compl. ¶ 32.

These allegations are fatal to Knopick's RICO claim under Anza and Hemi

because they reveal that the alleged racketeering activity was *directed at defrauding the United*

*States government, not Knopick*.  Knopick does not have standing to pursue RICO claims based

on purported racketeering activity that was directed to the United States government because the

alleged racketeering acts could not have been the direct, proximate cause of any harm to him.

While Knopick alleges that his account, which was reported to the IRS, was used in the tax

scheme to cover up other accounts that were not properly reported, he does not identify how the

use of his account for this alleged purpose caused him any harm whatsoever, let alone that it

caused the investment losses he seeks to recover.  Simply put, Knopick fails to allege any facts

that would even support an inference that his investment losses were directly caused by any

alleged predicate act of racketeering.

At best, Knopick's RICO claim could be seen as premised on the notion that if he

had known of the alleged tax fraud scheme, then he would not have invested with Knöpfel, and

consequently, would not have incurred any investment losses.  Without more, however, such

"but for" allegations fail as a matter of law.  See, e.g., Breslin v. Brainard, 128 Fed. Appx. 237,

240 (3d Cir. 2005) (dismissing RICO claim for failure to allege proximate cause, finding that,

"[t]hough Breslin has sufficiently shown that but for the alleged witness tampering he would not

have lost his job, his claims fail to show that the [predicate acts] proximately caused his termination"); Anderson v. Ayling, 396 F.3d 265, 270 (3d Cir. 2005) (affirming the dismissal of plaintiff's RICO claim on a 12(b)(6) motion where plaintiff showed that the alleged predicate acts were a but for cause of his termination, but could not demonstrate proximate cause); Amos v. Franklin Fin. Corp., Civ. No. 10-1285, 2011 WL 5903875, at *6 (M.D. Pa. Nov. 22, 2011), aff'd, 509 Fed. Appx. 165 (3d Cir. 2013) (citing Anza, 547 U.S. at 456-57) ("A RICO claim requires a plaintiff to show proximate cause; 'but for' causation is not enough.")

### 2. Knopick's RICO Claims Fail Because They Are Securities Fraud Claims.

Alternatively, as discussed more fully in Section C below, if Knopick claims under RICO that the scheme involved fraud in connection with his securities accounts even if it included wire and mail fraud, the claims still must be dismissed because the "RICO Amendment" to the Private Securities Litigation Reform Act ("PSLRA") has foreclosed securities fraud as a "predicate act" on which a RICO claim can be based. See Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc., 189 F.3d 321, 327-28 (3d Cir. 1999). This amendment is broad and it reaches *all* conduct that ultimately could constitute securities fraud. See id. at 331 ("[A] plaintiff cannot avoid the RICO Amendment's bar by pleading mail fraud, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud.")

The plain language of the Amended Complaint alleges that Defendant and Swiss Entities "induce[d] U.S. citizens into contracting with the UBS Enterprise, *to invest their monies with the UBS Enterprise and then for Defendants to perpetrate a fraud on them to avoid U.S. penalties and criminal charges, by effectively 'losing' the investment.*" See Am. Compl. at ¶ 250 (emphasis added). Put more simply, Plaintiff's claim is: "I invested money, now it's gone, and

it's my broker's fault."  This is the precise claim the RICO Amendment was designed to preclude.  See Bald Eagle, 189 F.3d at 327-28 (citing Matthews v. Kidder, Peabody & Co., Inc., 161 F.3d 156, 164 (3d Cir. 1998) (quoting 141 Cong. Rec. H2771)) ("The 'focus' of the Amendment was on 'completely eliminating the so-called 'treble damage blunderbuss of RICO' in securities fraud cases.'").  Plaintiff cannot state a RICO claim under the facts alleged, and therefore, the RICO claims in Counts VIII and IX should be dismissed.

      **3.**      **Knopick's § 1962(d) Claim Fails Because He Fails to Plausibly Aver a RICO Conspiracy.**

Section 1962(d) of RICO provides that it is unlawful to conspire to violate section 1962(a) to (c).  18 U.S.C. § 1962(d).  To state a conspiracy claim under section 1962(d), the plaintiff must plead that the defendants (1) had actual knowledge of a conspiracy to violate section 1962(a) to (c); and (2) knowingly agreed to facilitate a scheme that included the operation and management of a RICO enterprise.  See Salinas v. United States, 522 U.S. 52, 66 (1997); Smith v. Berg, 247 F.3d 532, 538 (3d Cir. 2001).  It is well-settled that a defendant can have no liability under section 1962(d) when the plaintiff has not alleged an underlying violation of section 1962(a) to (c).  Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1191 (3d Cir. 1993) (holding that liability cannot be imposed under section 1962(d) where plaintiff fails to establish a violation of section 1962(a) to (c)).  Here, as Knopick's Amended Complaint fails to adequately allege violations of section 1962(a) or (b) and, as set forth above, his claims under (c) fail as a matter of law.

Furthermore, Knopick has not adequately pleaded the existence of a RICO conspiracy.  To survive a motion to dismiss, the pleading must allege facts to support both the defendant's agreement to, and his or her knowledge of, the conspiracy.  See Glessner v. Kenny, 952 F.2d 702, 714 (3d Cir. 1991) (upholding dismissal of plaintiffs' section 1962(d) claims

where plaintiffs did not sufficiently allege agreement and knowledge, but instead argued that agreement and knowledge could be inferred), overruled on other grounds, Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., 46 F.3d 258, 260-261 (3d Cir. 1995).Here, Knopick fails to meet his pleading burden.  He summarily alleges, without supporting factual allegations, that members of the enterprise "engaged in the activities which affected interstate and foreign commerce, did knowingly and intentionally, combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Section 1962(c)…."  Am. Compl. ¶ 252.  Such bald and unsupported allegations do not satisfy the pleading requirements for a RICO conspiracy.  See Glessner, 952 F.2d at 714; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal quotation marks omitted).  Accordingly, Knopick's section 1962(d) claim should be dismissed.

**C.  SLUSA Precludes Knopick's State Law Claims.**

Knopick's state law claims are barred by the Securities Litigation Uniform Standards Act ("SLUSA"), which precludes such claims filed in a "covered class action" if those claims are based on an alleged "misrepresentation or omission of a material fact in connection with the purchase and sale of a covered security."  Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 74 (2006) (citing 15 U.S.C. § 78bb(f)(1)(A)).  Congress enacted SLUSA in response to a wave of state court securities fraud class actions which Congress viewed as an attempt to circumvent the procedural and substantive limitations of the Private Securities

Litigation Reform Act of 1995 (PSLRA),[11] 109 Stat. 737, 15 U.S.C. §§ 77z-1, 78u-4. See Dabit,

547 U.S. at 81.

Given the legislative motivation for SLUSA's enactment, the Supreme Court has

recognized that it must be construed broadly:

> The presumption that Congress envisioned a broad construction
> follows not only from ordinary principles of statutory construction
> but also from the particular concerns that culminated in SLUSA's
> enactment. A narrow reading of the statute would undercut the
> effectiveness of [PSLRA] and thus run contrary to SLUSA's stated
> purpose, viz., "to prevent certain State private securities class
> action lawsuits alleging fraud from being used to frustrate the
> objectives" of [the PSLRA].

Dabit, 547 U.S. at 86 (citation omitted). A plaintiff's state law claims should be dismissed

pursuant to SLUSA where, as here, the plaintiff sets forth class action allegations based on

securities fraud but artfully styles those allegations as state law claims in order to circumvent the

limitations of the PSLRA. See, e.g., In re Herald, 730 F.3d 112, 119 (2d Cir. 2013) ("[W]e agree

with the district court that, even though the complaints do not style their claims … as securities

fraud claims, the complainants' allegations nonetheless are precluded by SLUSA. Since SLUSA

requires our attention to both the pleadings and the realities underlying the claims, plaintiffs

cannot avoid SLUSA merely by consciously omitting references to securities or to the federal

securities law.") (internal quotation marks omitted)); Atkinson v. Morgan Asset Mgmt., Inc., 658

F.3d 549, 555 (6th Cir. 2011) ("In deciding whether SLUSA applies, we review the substance of

a complaint's allegations, and claimants cannot avoid its application through artful pleading that

---

[11]   The PSLRA imposes procedural substantive limitations upon the scope of the private right of
action available under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5
promulgated by the Securities Exchange Commission. For example, PSLRA "requires
plaintiffs to meet heightened pleading standards. It permits defendants to obtain automatic
stays of discovery pending the disposition of a motion to dismiss. It limits recoverable
damages and attorney's fees. And it creates a new 'safe harbor' for forward-looking
statements." See Chadbourne & Parke LLP v. Troice, 134 S. Ct. 1058, 1063 (2014).

removes the covered words ... but leaves in the covered concepts." (internal quotation marks omitted)); Segal v. Fifth Third Bank, N.A., 581 F.3d 305, 311 (6th Cir. 2009) (claimant cannot avoid SLUSA through artful pleading that eliminates the covered words but retains the covered concepts); Rowinski v. Salomon Smith Barney Inc., 398 F.3d 294, 304 (3d Cir. 2005) ("SLUSA stands as an express exception to the well-pleaded complaint rule, and its preemptive force cannot be circumvented by artful drafting.").

Distilled to its essence, Knopick's Amended Complaint alleges that he and the other purported class members were the victims of fraud, manipulation, and deceit in connection with their investment accounts. Indeed, the pleading is chock full of allegations of securities fraud. He claims that the defendants "consistently concealed from [him] that (1) his money had been invested against his instructions and (2) his account was excessively leveraged with loans from UBS AG secured by his UBS SFA investment," and that it was never disclosed to him that SFA and its parent were under investigation for a cross-border tax evasion scheme, for which his account had been created "as a cover for, and in furtherance of, that scheme." Am. Compl. ¶ 86. Plaintiff further alleges that agents of SFA "fraudulently and deceitfully conspired to and did lose or steal approximately $12,000,000.00 from Plaintiff's Swiss accounts ... and then conspired with ... UBS FS to conceal a theft, loss and fraud from Plaintiff for approximately five years." Id. at ¶ 95.

The Amended Complaint also alleges, albeit in conclusory fashion, that "members of the class" were treated similarly, including that their investment strategies were explained to UBS FS brokers, that those instructions were "similarly disregarded," that SFA was "never authorized by members of the class to deviate from their investment strategies," and that the defendants owed and violated "a duty to ensure that UBS SFA made investment decisions

suitable and appropriate for them and consistent with their investment objectives and goals,"
Am. Compl. ¶¶ 185-189, including by dissemination of false information, concealment and
misuse of margin. Id. at ¶¶ 190-193. Finally, Knopick alleges, the defendants "grossly breached
their duties by misrepresenting material information and recklessly and wantonly failing to
manage the funds of Plaintiff in similarly situated members of the class according to their
instructions and with due care, as well as with commercial standards and practices followed by
the investment industries." Id. at ¶ 193.

It does not matter that Knopick did not style his Amended Complaint as one for
securities fraud. See, e.g., Atkinson, 658 F.3d at 555, supra p. 31. These claims – artfully styled
as state law claims such as common law fraud, breach of fiduciary duty, and breach of contract –
are nonetheless, in reality, prototypical allegations of a section 10(b) claim for fraud in
connection with the purchase or sale of securities. See, e.g., SEC v. Zandford, 535 U.S. 813, 815
(2002) (allegations that financial advisor disregarded stated investment objectives it promised to
"conservatively invest" together with the misappropriation of proceeds from securities sales
states a section 10(b) claim).[12] These are exactly the types of class action allegations that

---

[12] See also Brown v. The E.F. Hutton Group, Inc., 991 F.2d 1020, 1031 (2d Cir. 1993) (an
unsuitability claim is a subset of the ordinary section 10(b) fraud claim in which a plaintiff
must allege and prove (1) that the securities purchased were unsuited to the buyer's needs;
(2) that the defendant knew or reasonably believed the securities were unsuited to the buyer's
needs; (3) that the defendant recommended or purchased the unsuitable securities for the
buyer anyway; (4) that, with *scienter*, the defendant made material misrepresentation or,
owing the duty to the buyer, failed to disclose material information relating to the suitability
of the security; and (5) that the buyer justifiably relied to its detriment on the defendant's
fraudulent conduct); Louros v. Kreicas, 367 F. Supp. 2d 572, 585 (S.D.N.Y. 2005) (a claim
of unsuitability is a subset of the ordinary section 10(b) fraud claim); Rowe v. Morgan
Stanley Dean Witter, 191 F.R.D. 398, 410 (D.N.J. 1999) (analytically, an unsuitability claim
is a subset of the ordinary § 10(b) fraud claim; Jellison v. Buys-MacGregor-MacNaugton-
Green Awalt & Co., No. G87–216 CA6, 1988 WL 108287, at *2 (W.D. Mich. Apr. 29, 1988)
(the act of purchasing and selling securities without authorization and contrary to direct client

Congress intended to preclude when it enacted SLUSA. See Dabit, 547 U.S. at 86 (explaining that Congress enacted SLUSA to prevent certain state private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the PSLRA). Accordingly, SLUSA mandates the dismissal of all of Knopick's statutory and common law state claims. See Rowinsky, 398 F.3d at 296 (claims for breach of contract, unjust enrichment and violation of Pennsylvania state consumer protection statutes by retail brokerage customer class precluded by SLUSA).

**D.      Plaintiff's Claim Under New York General Business Law § 349
         Fails Because the Alleged Harm Is Not "Consumer Oriented."**

Plaintiff's claim in Count VII under New York's consumer protection law, New York General Business Law Section 349, fails because it is contrary to well-settled law. Under that statute, a plaintiff must demonstrate that the allegedly harmful action or practice is "consumer oriented." See Gray v. Seaboard Sec, Inc. 788 N.Y.S.2d 471, 472 (App. Div., 3d Dep't, 2005) (citation omitted); Green Harbour Homeowners' Ass'n v. G.H. Dev. & Constr., Inc., 763 N.Y.S.2d 114 (App Div., 3d Dep't, 2003). In other words, this statute is only meant to apply to "traditional consumer products, such as vehicles, appliances or groceries," as well as other "goods to be 'consumed' or 'used.'" See Gray, 788 N.Y.S.2d at 472 (citation omitted); see also DeAngelis v. Corzine, 17 F. Supp. 3d 270, 285 (S.D.N.Y. 2014) ("The [consumer protection] statute offers redress only for those public harms suffered in connection with consumer activity."). Securities transactions are outside the scope of the statute. See, e.g., Brooks v. Key Trust Co. Nat'l Assn., 809 N.Y.S.2d 270, 273 (App Div., 3d Dep't, 2006); Gray, 788 N.Y.S.2d at 472; DeAngelis, 17 F. Supp. 3d at 284 (citing cases). Even "ancillary services"

---

instructions adequately supports an allegation of a deceptive practice and "reckless disregard" in violation of section 10(b) of the Securities Exchange Act of 1934).

to securities transactions do not fall within the protection of New York's consumer law. Roling v. E*Trade Securities LLC, 860 F. Supp. 2d 1029, 1033 (N.D. Cal. 2012) (applying New York law) (citing Gray, 788 N.Y.S.2d at 472).

Though Knopick, in his complaint, asserts in conclusory fashion that the defendants' alleged behavior was "consumer-oriented," Am. Compl. ¶ 237, his claim is not recognized under New York's consumer protection statute. An investor who loses money buying and selling securities has no claim under New York General Business Law Section 349. See Brooks, Gray, DeAngelis supra. UBS FS's role here was of the "ancillary" variety, as it was alleged merely to have connected Knopick to the Swiss Entities. Defendant's "services" to Knopick simply are not actionable under New York's consumer protection law. Count VII of the Amended Complaint must be dismissed.

### E. Knopick's Claims for Fraud, Negligence, Breach of Fiduciary Duty, and Unjust Enrichment are Barred as Duplicative of His Breach of Contract Claim.

Knopick's claims for fraud, negligence, breach of fiduciary duty, and unjust enrichment are also barred as a matter of law, because they duplicate his breach of contract claim in Count V. New York law[13] includes a doctrine much like Pennsylvania's "gist of the action" doctrine, under which "a tort cause of action generally does not lie where it is duplicative of a claim sounding in contract." Icebox-Scoops v. Finanz St. Honore, B.V., 676 F. Supp. 2d 100, 112-13 (E.D.N.Y. 2009) (noting similarity of New York law to "gist of the action" doctrine). Based upon this doctrine, the New York courts will routinely dismiss tort claims that duplicate breach of contract claims. See, e.g., Eden Roc, LLLP v. Marriott Int'l, Inc., 983 N.Y.S.2d 549

---

[13] The parties' agreement expressly provides that New York law applies here. Am. Compl., Exhibit A, p. 20 ("This Agreement, its enforcement and the relationship between you and UBS Financial Services shall be governed by the laws of the State of New York, … without giving effect to the choice of law or conflict of laws provisions thereof ….").

(App. Div., 1st Dep't, 2014) (affirming dismissal of trespass claim as duplicative of breach of

contract claim). So, too, should this Court dismiss Plaintiff's claims for fraud,[14] negligence,[15]

breach of fiduciary duty,[16] and unjust enrichment.[17] All of these claims are premised on the

---

[14] Compare Am. Compl. ¶ 176 (alleging that defendants falsely represented to Knopick that the Swiss parties had relevant expertise and would make investment decisions consistent with the clients' instructions), with 126 Newton St., LLC v. Eng'g Servs. Assocs., P.C., 988 N.Y.S.2d 524 (N.Y. Supr. Ct. 2014) (Table) ("[T]he plaintiff essentially alleges that the defendants made false representations concerning their level of skill and experience to induce the plaintiff to enter into a contractual relationship. This cause of action is duplicative of the plaintiff's cause[] of action for breach of contract ...."), and MMCT, LLC v. JTR College Point, LLC, 997 N.Y.S.2d 374, 375 (App. Div. 1st Dep't, 2014) (holding fraudulent inducement claim is barred as duplicating breach of contract claim, because the representation alleged was not collateral to the contract, and the plaintiff alleged only that the defendant was insincere when it promised to perform under the contract).

[15] Compare Am. Compl. ¶ 184 (alleging defendants owed a duty to act with "due care" in handling investments on Knopick's behalf, a duty that indisputably arose solely out of the parties' contracts), with Bd. of Managers of Soho N. 267 W. 124th St. Condo. v. NW 124 LLC, 984 N.Y.S.2d 17, 18-19 (App. Div., 1st Dep't, 2014) (affirming dismissal of negligence claims as duplicative of breach of contract claim, because "breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. Here, Plaintiff failed to allege any legal duty that would give rise to an independent tort cause of action." (citations omitted)), and Sutton v. Hafner Valuation Group, Inc., 982 N.Y.S.2d 185, 188 (App. Div., 3rd Dep't, 2014) (affirming dismissal of negligence claim because "[t]he negligence or negligent misrepresentation claim could not survive as it is based on the same alleged wrongful conduct as the breach of contract claim, rendering it duplicative, and defendants have no special relationship or legal duty to plaintiff other than their contractual relationship.").

[16] Compare Am. Compl. ¶¶ 196, 197 (alleging contracts between the parties and the Swiss Entities provided the basis upon which fiduciary duties were owed by Defendant and Swiss Entities), with Mosaic Caribe, Ltd. v. AllSettled Grp., Inc., 985 N.Y.S.2d 33, 36 (App. Div., 1st Dep't, 2014) (affirming dismissal of fiduciary duty claim as duplicative of breach of contract claim, where plaintiff "failed to allege that [defendant] had any duty to [plaintiff] apart from that set forth in the contract, and thus, that it had any independent fiduciary duty"), and JMF Consulting Grp. II, Inc. v. Beverage Marketing USA, Inc., 948 N.Y.S.2d 314, 317-18 (App. Div., 2nd Dep't, 2012) (reversing trial court's failure to dismiss breach of fiduciary duty claim, where terms of contract between parties established the duties owed, thus making fiduciary duty claim duplicative of contract claim).

[17] See Benham v. eCommission Solutions, LLC, 989 N.Y.S.2d 20, 21-22 (App. Div., 1st Dep't, 2014) (plaintiff's unjust enrichment claim dismissed as duplicative of contract claim); Scarola Ellis LLP v. Padeh, 984 N.Y.S.2d 56, 59 (App. Div., 1st Dep't, 2014) ("It is well

duties the defendants allegedly owed to Knopick pursuant to the parties' contract (or are premised on the Swiss Entities' duties under the separate Swiss contracts). Those claims duplicate the contract claim, and, therefore, are barred by New York law. Counts I through IV of Knopick's Amended Complaint must be dismissed.

### F. Knopick's Negligence-Based Claims are Time-Barred.

Knopick's negligence and negligent breach of fiduciary duty[18] claims are time-barred. The statute of limitations for these claims is three years. See N.Y. Civ. Prac. Law & Rules, § 214 (negligence limitation period); Carbon Capital Mgmt., LLC v. Am. Express Co., 932 N.Y.S.2d 488, 495 (App. Div., 2nd Dep't, 2011) (negligent breach of fiduciary duty limitations period). According to the Amended Complaint, Knopick suffered his alleged injury in "late 2008" and specifically complained about it to Seifert then.[19] See Am. Compl. ¶¶ 90-91. At the latest, then, Knopick would have needed to commence this action by 2011 in order to assert these claims. He did not file such claims against the defendants until much later, and therefore these claims are time-barred.

To avoid this result, Knopick alleges in his pleading that the statute of limitations should be tolled due to the defendants' and the Swiss Entities' alleged intentional concealment of

---

settled that a claim for unjust enrichment does not lie where it duplicates or replaces a conventional contract claim.").

[18] New York recognizes different limitations periods for negligence-based breach of fiduciary duty claims (3 years) and fraud-based breach of fiduciary duty claims (6 years). See, e.g., Carbon Capital Mgmt., LLC v. Am. Express Co., 932 N.Y.S.2d 488, 495 (App. Div., 2nd Dep't, 2011). Plaintiff has alleged both types.

[19] Indeed, prior to filing this action, Plaintiff commenced an action by Summons in Dauphin County, Pa. in which he sought pre-complaint discovery. The entire premise of that action was his alleged complaint about his losses to Seifert in late 2008, and Seifert's alleged comment that in such circumstances UBS would make the customer whole. See Knopick v. UBS AG, Dauphin County No. 2013-CV-9804. Plaintiff, of course, had the same judicial process available to him at that time.

facts from him. This argument fails. His negligence-based claims are governed by New York's discovery rule, which is codified at N.Y. Civ. Prac. Law & Rules, § 203(g). Under that rule, the plaintiff has the longer of the standard limitations period or two years "from the time when facts were discovered or from the time when facts could *with reasonable diligence* have been discovered." Id. Where the plaintiff seeks to invoke the discovery rule, he bears the burden of demonstrating that the alleged facts comprising his claim were concealed from him, and that he could not have reasonably discovered them earlier. See, e.g., Julian v. Carroll, 704 N.Y.S.2d 654, 655 (App. Div., 2d Dep't, 2000) (citing Hillman v. City of N.Y., 693 N.Y.S.2d 224 (App. Div., 2d Dep't, 1999); Lefkowitz v. Appelbaum, 685 N.Y.S.2d 460 (App. Div., 2d Dep't, 1999)).

Under either option, Knopick's negligence-based claims are time-barred because he was on inquiry notice of his alleged injury based on the very public prosecution of UBS AG – at the very latest, by February 18, 2009, when the Deferred Prosecution Agreement, referenced in Knopick's Amended Complaint, was entered into between UBS AG and the United States Government. See United States v. UBS AG, No. 0:09-cr-60033-JIC-1, Dkt. 20 (S.D. Fla. Feb. 18, 2009). Knopick goes to great lengths to document this wrongdoing in his Amended Complaint. See Am. Compl. at ¶¶ 21 - 76.

The Southern District of New York has recognized that tolling is inappropriate under similar circumstances. See Gonzalez v. Nat'l Westminster Bank PLC, 847 F. Supp. 2d 567, 572 (S.D.N.Y. 2012). In Gonzalez, the plaintiffs sued a bank, alleging that they lost millions of dollars due to a fraudulent loan scheme. Id. at 568. The plaintiffs further alleged that the bank had fraudulently concealed the nature of the fraud, which had prevented them from bringing their claim earlier. Id. at 569. The court disagreed, observing that the plaintiffs' factual allegations "mirrored in many respects" a November 2003 United States Senate Report on the

defendant bank.  Id. at 570-71.  Considering this report along with public hearings that were

held, the court concluded that the plaintiff was on inquiry notice at least as of the time of the

report, which placed the plaintiff's claims outside of the limitations period.  Id. at 570-72.

   The result in Gonzalez should control here.  The federal prosecution of UBS AG

was widely publicized, see U.S. Senate Permanent Subcommittee on Investigations, Committee

on Homeland Security and Governmental Affairs, Tax Haven Banks & U.S. Tax Compliance

(July 17, 2008)[20] as was the February 18, 2009 Deferred Prosecution Agreement.  See The New

York Times, A Swiss Bank is Set to Open Its Secret Files (Feb. 19, 2009), available at

http://www.nytimes.com/2009/02/19/business/worldbusiness/19ubs.html?_r=0;[21] see also ABC

News, UBS Exec Indicted in Tax Evasion Probe (Nov. 12, 2008) available at

http://abcnews.go.com/TheLaw/story?id=6238227; Forbes, End of an Era? (Aug. 11, 2008),

attached as Exhibit 4; The Wall Street Journal, Offshore Tax Evasion Costs U.S. $100 Billion,

Senate Probe of UBS, LGT Indicates (July 17, 2008), attached as Exhibit 5; The New York

Times, Ex-UBS Bank Pleads Guilty in Tax Evasion (June 20, 2008), available at

http://www.nytimes.com/2008/06/20/business/20tax.html; The Guardian, Tax Scandal Leaves

Swiss Giant Reeling (June 28, 2008) available at http://www.theguardian.com/business/2008/

jun/29/ubs.banking.  Knopick therefore was on inquiry notice at least from the date of the

Deferred Prosecution Agreement, if not well before.  As such, the limitations period had expired

on his negligence-based claims well before he filed any action against the defendants here.

---

[20] Plaintiff cited to this document in his Amended Complaint, see ¶ 145 n. 2, and attached
portions of it to his opposition to Defendants' Motion to Dismiss in the Middle District
action.  See Knopick v. UBS AG, M.D.Pa. Civ. No. 14-2090, Dkt. No. 33, Exhibits A, C, Q.
Plaintiff also cited to the hearing for which this report was prepared.  See id., Exhibit Y.

[21] This article was attached as Exhibit B to Knopick's opposition to the Swiss Entities' Motion
to Dismiss in the Middle District.

Therefore, Knopick's claims for gross negligence (Count II) and negligent breach of fiduciary duty (Count III) should be dismissed.

### G. Plaintiff's Unjust Enrichment Claim is Barred Because the Parties Have a Valid and Enforceable Contract.

Finally, New York law does not permit unjust enrichment claims where there is a valid and enforceable contract. See Estate of Sonnelitter v. Estate of White, 983 N.Y.S.2d 149, 152 (App. Div., 4th Dep't, 2014) (holding unjust enrichment claim barred by contract); Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790–791 (N.Y. 2012) ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.").

Furthermore, even if the Court could allow the unjust enrichment claim to proceed in spite of New York law, it nevertheless fails because it does not meet pleading requirements. Knopick's unjust enrichment claim is based on the notion that the Swiss Entities "misappropriated" his money and does accuse UBS FS of the misappropriation. See Am. Compl. at ¶ 213. This is insufficient to withstand the Twombly plausibility analysis, as it is based on mere speculation. See, e.g., Mims v. City of Philadelphia, Civ. No. 09-4288, 2010 WL 2077140, *6 (E.D. Pa. May 19, 2010) (dismissing claim where complaint failed to "raise a right to relief above the speculative level"). Indeed, Knopick expressly admits in paragraph 91 of his Amended Complaint that whether one of the Swiss parties "actually misappropriated [Plaintiff's] money is unknown." He asserts no facts supporting the claim of misappropriation by UBS FS.

## IV. CONCLUSION

For the foregoing reasons, Defendant, UBS Financial Services Inc., respectfully requests that this Court enter an order in the attached form dismissing and striking the Amended Complaint of the Plaintiff, Nicholas Knopick.

Respectfully submitted,

*/s/ David C. Franceski, Jr.*

David C. Franceski, Jr. (Pa. Id. No. 32664)
William T. Mandia (Pa. Id. No. 91792)
Karl S. Myers (Pa. Id. No. 90307)
Alex L. Rubenstein (Pa. Id. No. 313657)
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
(215) 564-8000
dfranceski@stradley.com
wmandia@stradley.com
kmyers@stradley.com
arubenstein@stradley.com

Attorneys for Defendant,
UBS Financial Services Inc.

Dated: May 15, 2015