IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICHOLAS KNOPICK | : | |
| | : | Civ. No. 14-5639 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UBS FINANCIAL SERVICES INC. | : | |
| | : | |
| Defendant. | : | |
| | : | |

**REPLY OF DEFENDANT UBS FINANCIAL SERVICES INC.
IN FURTHER SUPPORT OF MOTION TO DISMISS AND STRIKE**

David C. Franceski, Jr. (Pa. Id. No. 32664)
William T. Mandia (Pa. Id. No. 91792)
Isaac A. Hof (Pa. Id. No. 314094)
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
(215) 564-8000
dfranceski@stradley.com
wmandia@stradley.com
ihof@stradley.com

*Attorneys for Defendant,
UBS Financial Services Inc.*

Dated: July 2, 2015

# TABLE OF CONTENTS

A.  Plaintiff's "Statement of Facts" Contains Core Implausibilities. ...........................1

B.  Nothing in Plaintiff's Response Resolves the Rule 23 Deficiencies in the Amended Complaint. ...............................................................................................4
    1.  Knopick's Response Offers No Resolution to Highly Particularized Issues such as Causation, Damages, and Reliance. ......................................4
    2.  Knopick's So-Called "Common" Questions Are Not Common and Do Not Predominate Over the Highly Individualized Issues. ...........................7

C.  *Morrison* Does Not Preclude PSLRA Applicability to RICO. ...............................8

D.  Plaintiff's Response Fails to Resolve RICO's Causation Requirement. .................9

E.  Defendant's SLUSA Motion Is Not Barred By Rule 12(g)(2) and Applies To Plaintiff's Claim for Investment Losses in His SFA Account ..............................11
    1.  Rule 12(g)(2) Does Not Bar Plaintiff's SLUSA Motion. ..........................11
    2.  Knopick's SFA Account Traded "Covered Securities." ............................13

F.  Plaintiff's Request to File a Second Amended Complaint Should be Denied.......14

# TABLE OF AUTHORITIES

**CASES**

*Albany Ins. Co. v. Almacenadadora Somex S.A.*,
    5 F.3d 907 (5th Cir. 1993) ...................................................................................... 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................ 1, 3-4

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................... 1, 3

*Bridge v. Phoenix Bond & Indemnity Co.*,
    553 U.S. 639 (2008) .................................................................................................. 10

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013) ................................................................................................ 4

*DiCostanzo v. Chrysler Corp.*,
    57 F.R.D. 495 (E.D. Pa. 1972) ................................................................................... 8

*Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.*,
    482 F.3d 247 (3d Cir. 2007) ..................................................................................... 14

*Fountain v. U.S.*,
    605 F. Supp. 2d 608 (D. Del. 2009) ......................................................................... 11

*Gaffin v. Teledyne, Inc.*,
    611 A.2d 467 (Del. 1992) ........................................................................................... 6

*Garges v. People's Light & Theater, Co.*,
    CIV.A. 09-2456, 2012 WL 202828 (E.D. Pa. Jan. 24, 2012) .................................. 12

*Gaston v. Exelon Corp.*,
    247 F.R.D. 75 (E.D. Pa. 2007) ................................................................................... 8

*GCL, LLC v. Schwab*,
    No. 11-04593, 2012 WL 4321972 (E.D. Pa. 2014) ................................................. 12

*Ge Dandong v. Pinnacle Performance Ltd.*,
    No. 10 CIV. 8086 JMF, 2013 WL 5658790 (S.D.N.Y. Oct. 17, 2013) ..................... 6

*Gilmore v. Shearson/Am. Exp. Inc.*,
    811 F.2d 108 (2d Cir. 1987) ..................................................................................... 12

*Glover v. Udren*,
    Civ. No. 08-990, 2013 WL 6237990 (W.D. Pa. Dec. 3, 2013) .................................. 6

*Hemi Group, LLC v. City of New York, N.Y.*,
 559 U.S. 1 (2010) ..................................................................................................................10

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*,
 199 F. Supp. 2d 993 (C.D. Cal. 2002) ....................................................................................11

*Lettrich v. J.C. Penney Co., Inc.*,
 90 Fed. Appx. 604 (3d Cir. 2004) .............................................................................................8

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
 651 F.3d 268 (2d Cir. 2011) .....................................................................................................8

*Morrison v. Nat'l Australia Bank, Ltd.*,
 561 U.S. 247 (2010) ............................................................................................................. 8-9

*Negron v. School Dist. of Philadelphia*,
 994 F. Supp. 2d 663 (E.D. Pa. 2014) ......................................................................................12

*Penn-Mont Benefit Services, Inc. v. Crosswhite*,
 2003 WL 203570 (E.D. Pa. Jan. 29, 2003) .............................................................................12

*Perkumpulan Investor Crisis Ctr. Dressel-WBG v. Wong*,
 C09-1786-JCC, 2014 WL 1047946 (W.D. Wash. Mar. 14, 2014) ...........................................9

*Picard v. Kohn*,
 907 F. Supp. 2d 392 (S.D.N.Y. 2012) ......................................................................................9

*Romano v. Kazacos*,
 609 F.3d 512 (2d Cir. 2010) ...................................................................................................11

*Sec. Investor Prot. Corp. v. BDO Seidman, LLP*,
 222 F.3d 63 (2d Cir. 2000) .......................................................................................................6

*Yarger v. ING Bank, fsb,*
 285 F.R.D. 308, 328 (D. Del. 2012) .........................................................................................6

## **RULES**

Securities and Exchange Commission Rule 10b–5 ..........................................................................6

Fed. R. Civ. P. 12(b)(6) ...................................................................................................................12

Fed. R. Civ. P. 12(g) ................................................................................................................ 11-12

Fed. R. Civ. P. 23 .........................................................................................................................4, 8

**STATUTES**

Private Securities Litigation Reform Act of 1995 ("PSLRA"), 109 Stat. 737, 15 U.S.C. §§ 77z-1, 78u-4 ................................................................................................................6, 8

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* .... 8-11

Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 112 Stat. 3227 ....... 6, 9, 11-13

Investment Company Act of 1940. 15 U.S.C. § 78 ......................................................................13

### A. Plaintiff's "Statement of Facts" Contains Core Implausibilities.

Defendant UBS Financial Services Inc. ("UBS FS") challenges the legal sufficiency of plaintiff Nicholas Knopick's ("Knopick") Amended Complaint ("AC"). Knopick has responded to those legal challenges with an Opposition Brief, almost one-half (13 pages) of which purports to be a "Statement of Facts" drawn from the AC. Though a plaintiff's allegations are generally accepted as true at this stage, both *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) make clear, any deferential reading of the AC is inapplicable to legal conclusions, *Iqbal,* 556 U.S. at 678. Furthermore, "factual allegations" supporting a cause of action must have some semblance of plausibility, a determination the Court must make at the dismissal stage. Only a complaint that plausibly gives rise to a claim for relief survives a motion to dismiss, *id.* at 679, and a claim has facial plausibility only when the plaintiff pleads factual content that allows the court to draw a reasonable inference. *Id.* The Court need not, and indeed cannot, suspend reason in making that determination.

The most recent iteration of Knopick's theory of recovery, which not only requires wrongdoing by UBS FS, but for any federal claims, wrongdoing by UBS FS with *scienter*, is that Knopick and the class were fraudulently induced into opening investment accounts with UBS Swiss Financial Advisers AG ("SFA") and UBS AG ("AG") in violation of U.S. banking laws, and without first being told that AG was under investigation for illegal banking and tax fraud or that SFA and two of its investment adviser representatives, Andreas Knöpfel and Rene Elste, were under investigation for the same misconduct. Furthermore, Knopick now claims in his opposition brief that he and the class were harmed by this because their investments were eventually sold out at a loss in a "fire sale" to satisfy margin calls. Specifically, Knopick claims variously that the margin calls were made in order to fund a multi-million dollar fine assessed against it by the U.S. Department of Justice ("DOJ") for the banking

and tax fraud, to assist in the divestiture of an unlawful cross-border banking and investment business, or to cover up the tax fraud.

The "factual" underpinnings for these theories are neither plausible nor reasonable in at least the following respects, and none of the source material cited in the AC suggests otherwise:

- Neither UBS FS, a heavily regulated U.S. brokerage firm, nor SFA, a duly SEC-registered investment adviser, fully within the jurisdiction of both the SEC and the DOJ, was ever alleged by either to have done anything illegal;

- Neither Knöpfel nor Elste, duly licensed investment adviser representatives of SFA, (not AG) were ever alleged by any governmental entity to have done anything illegal;

- None of the source materials on which the AC relies suggests that, in referring accounts to SFA, UBS FS was part of any illegal banking or tax fraud conspiracy, and even the AC concedes that the accounts of Knopick and the putative class were entirely tax-law compliant;

- UBS FS, SFA, and AG maintained, and are entitled to the protections of, entirely separate corporate existences;

- Nothing in any of the AC source materials suggests that UBS FS was part of any "new money" scheme or conspiracy; rather UBS FS made entirely lawful referrals to SFA, a duly-SEC registered investment adviser conducting an entirely lawful investment business, and any allegation of any other purpose to SFA's existence is entirely implausible;

- In discussing what it characterizes as AG's illegal "cross-border" banking and investment business, the AC improperly and implausibly fails to distinguish between the legitimate cross-border SFA accounts of Knopick and the putative class, and the tax-evading cross-border accounts which were the subject of the DOJ investigation;

- Paragraph 5 of the DPA specifically acknowledges the legitimacy of the SFA cross-border business of Knopick and the putative class:

> The Government recognizes that UBS [AG] has previously announced that it will exit the United States cross-border business and in the future will only provide banking or securities services to United States resident private clients (including offshore trusts, foundations, and non-operating

>    companies with one or more United States
>    individuals as a beneficial owner) through
>    subsidiaries or affiliates registered to do business in
>    the United States with the United States Securities
>    and Exchange Commission ("SEC") and its
>    requiring United States private clients to supply a
>    fully executed IRS Form W9 . . . .[1]

- It cannot be plausibly inferred, and it is not reasonable to conclude, that UBS FS was acting as a fiduciary (a legal conclusion) in responding to Knopick's request for a referral to the Swiss entities;

- It is not plausible to conclude from any source on which the AC relies that the "[e]stablishment of UBS SFA was part of the illegal tax scheme . . ." or that SFA was designed to "provide a distraction for UBS AG and its tax-cheat U.S. customers . . ."[2];

- It is not plausible to conclude that UBS FS financial advisors had a duty to advise Knopick and the putative class of a DOJ investigation which the AC concedes was not known to any UBS entity until August 2007, especially given that after it was regularly reported in the popular press, Knopick (and apparently the class) took no action in response to it;

- Knopick's allegation that SFA concealed how his account was invested is not plausible in light of the receipt by him of monthly account statements plainly reporting both his investment holdings and his margin. *See, e.g.*, Laursen and Seifert Affidavits attached hereto as Exhibits 1 and 2, respectively.

- The Court cannot plausibly infer from anything in the AC that the margin calls to which Knopick's account, or the accounts of the putative class, may have been subjected were "to feed AG's appetite for margin calls" (which makes no logical sense), or "to cover up the tax fraud scheme or to pay the [DOJ] fine."[3] Margin liquidations are simply repayment of debt.

As the *Iqbal* court made clear, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 696 (citing *Twombly*, 550 U.S. at 557).

---

[1] *See* Neg. Dec., Ex. C.

[2] *See* Pl.'s Mem. at 8-9 (Dkt. No. 48.).

[3] *See id.* at 16, 26.

Simply put, in the words of *Iqbal*, Knopick's AC has not "nudged [his] claims . . . across the line from conceivable to plausible." *Id.* at 680.

> **B. Nothing in Plaintiff's Response Resolves the Rule 23 Deficiencies in the Amended Complaint.**
>
> **1. Knopick's Response Offers No Resolution to Highly Particularized Issues such as Causation, Damages, and Reliance.**

Defendant argued in its opening brief that Knopick's class action allegations fail to satisfy the requirements of Rule 23 because, *inter alia*, his claims would require the determination of a number of highly particularized issues including causation, damages, and reliance, which are central to the claims and which cannot be addressed on a classwide basis. Knopick does not dispute this assertion. Nor does he suggest any mechanism by which these individualized issues could be resolved on a classwide basis. As is obvious from Knopick's response, these issues would require thousands of separate proceedings, which is exactly why this case is not appropriate for class action litigation. *See* Pl.'s Mem. at 36 (Dkt. No. 48.).

Furthermore, Knopick has not proffered a coherent theory of causation or damages that is tied to the underlying causes of action, let alone one that he could apply or prove on a classwide basis. As the Supreme Court explained in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013), a class action plaintiff must offer a classwide theory of damages that is tied to the underlying harm for which the purported class seeks relief. Otherwise, the plaintiff "cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id.* Here, Knopick cannot meet the *Comcast* standard because he has not identified any theory of causation or damages that is attributable to the allegedly fraudulent conduct of Defendant and applied on a classwide basis. These issues could only be addressed by delving into the particulars of each and every class members' individual accounts, which is the antithesis of how a class action should proceed.

In what appears to be a vain attempt to address the glaring absence of any common theory of causation or damages, Knopick argues for the first time that "the penultimate loss was caused by UBS AG's calling the margin loans." Pl.'s Mem. at 29. According to Knopick, these "illegal" margin loans were called to "cover up the extent of the scheme" and "gain cash to pay the [DOJ] fine." Pl.'s Mem. at 29. These are brand new allegations, raised nowhere in the underlying Amended Complaint. Moreover, there was nothing "illegal" about Knopick's use of margin[4], and the margin calls, themselves, were not precipitated by UBS AG, but by the catastrophic 2008 global financial market decline. Faced with that decline, and the consequent decline in the collateral value of his account, as in any margined investment account, Knopick had two options: add funds to his account or have securities sold out. He apparently chose the latter. That has nothing to do with the causes of action alleged.

Also noticeably absent from these allegations is any explanation of *how* the alleged margin calls, a contractual obligation of Knopick and the putative class and a contractual right of AG, proximately caused Knopick and the class to suffer investment losses. Furthermore, the "margin theory" only raises additional individualized issues that would have to be resolved on a case-by-case basis, including, but not limited to: which class members entered into margin agreements, why those members had margin, whether such margin was excessive or unsuitable in light of their investment objectives, whether those members suffered liquidations, and whether the liquidations resulted in any loss.

Equally without merit is Knopick's attempt to downplay the highly individualized issue of reliance by suggesting that fraud is only one of several claims alleged in the Amended

---

[4] In fact, the Amendment to the Deferred Prosecution Agreement sanctioned the use of margins for accounts going forward. *See* Neg. Dec., Ex. C. The DOJ certainly would not have sanctioned going forward an activity that was "illegal" in the past.

Complaint. Even a cursory review of the Amended Complaint reveals Knopick's class action claims are replete with allegations of fraud, misrepresentation, and deceit. Indeed, just pages after taking this position, Knopick acknowledges that "the issues in this case are . . . fraud, deceit, and misrepresentation . . ." *See* Pl.'s Mem. at 38 .

Knopick's motivation to downplay the significance of the reliance issue in this case is obvious: he does not – and could not – propose, any mechanism for the Court to determine reliance on a class-wide basis. Indeed, what each putative class member knew or should have known, and whether reliance was reasonable, is inherently an individualized issue. For this reason, courts in the Third Circuit have routinely held that a need for proof of individualized reliance renders cases like this one not conducive to class treatment.[5] And while courts recognize that reliance can be presumed for misleading omissions in the federal securities context, Plaintiff has vehemently denied that he has set forth federal securities claims.[6] Of course, if Knopick's claims are considered federal securities law violations, then his claims are necessarily barred by SLUSA[7] and the PSLRA.[8] *See Sections C* and *E, infra*.

---

[5] *See Glover v. Udren*, Civ. No. 08-990, 2013 WL 6237990, at *21 (W.D. Pa. Dec. 3, 2013) (refusing to certify class action for Pennsylvania Consumer Protection Law claims because the claim requires an individualized finding respecting each plaintiff's justifiable reliance); *Yarger v. ING Bank, fsb*, 285 F.R.D. 308, 328 (D. Del. 2012) ("Because reliance is a central question that goes to the heart of the merits of the Proposed Class's fraud claims and must be proven through individualized evidence, the predominance requirement is not met with respect to the fraud claims."); *see also Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 474 (Del. 1992) ("A class action may not be maintained in a purely common law fraud case since individual questions of law or fact, particularly as to the element of justifiable reliance, will inevitably predominate over common questions of law or fact.").

[6] *See, e.g., Ge Dandong v. Pinnacle Performance Ltd.*, No. 10 CIV. 8086 JMF, 2013 WL 5658790, at *9 (S.D.N.Y. Oct. 17, 2013) (citing *Sec. Investor Prot. Corp. v. BDO Seidman, LLP,* 222 F.3d 63, 72 (2d Cir. 2000) ("The fraud-on-the-market presumption of reliance that applies in federal securities claims under Rule 10b–5 does not apply to a common law fraud action.")).

[7] Securities Litigation Uniform Standards Act of 1998, 112 Stat. 3227.

[8] Private Securities Litigation Reform Act of 1995, 109 Stat. 737, 15 U.S.C. §§ 77z-1, 78u-4.

## 2. Knopick's So-Called "Common" Questions Are Not Common and Do Not Predominate Over the Highly Individualized Issues.

In a transparent attempt to divert attention away from the highly individualized issues that clearly predominate here, Knopick sets forth a list of so-called "common questions." *See* Pl.'s Mem. at 35.  First, Plaintiff fails to demonstrate how any of these questions are actually common.  By way of example, Knopick proposes that the following question is "common" to all putative class members:  "Whether UBS FS and its employees made false and misleading statements to U.S. customers concerning the expertise of UBS SFA and UBS AG in international banking and financial advising."  Far from being common and amenable to class wide treatment, this question would require the Court to analyze the unique and individual oral and written communications that UBS FS or SFA representatives had with each purported class member. Plaintiff also proposes that "[w]hether UBS FS and its employees are liable for the damages incurred by US customers as a result of UBS FS's wrongful conduct" is a common question. Not only is this question not common;  answering it would require an extensive, fact-specific, and complicated inquiry of each class member to determine whether his/her investment losses were proximately caused by Defendant's allegedly "wrongful conduct," as opposed to some other independent factor.

Second, even if common, these questions could not predominate over the highly individualized issues that are presented by Knopick's theory of the case.  Indeed, even under Knopick's own theory of predominance, he has provided no method for how this Court could determine on a classwide basis "whether the defendant's conduct was common as to all of the class members, and whether all of those class members were harmed by the defendant's conduct" because those issues can only be addressed on an individualized basis.  Even if certain generalized issues presented by the AC can be fashioned into common questions, class

certification would still be inappropriate because they do not predominate over the plethora of individual issues already noted.[9] The Court simply cannot certify a class on a handful of common issues, thereby leaving the vast majority of remaining issues, which dwarf in volume and complexity those alleged to be common, to be resolved on an individualized basis before any recovery can be had. To do so would defeat the purpose of a class action, which is intended to promote efficiency by addressing claims that can be resolved in a single proceeding based on common proof. There is simply no way the Court could do so given the types of investment claims Knopick attempts to bring here.[10]

### C. *Morrison* Does Not Preclude PSLRA Applicability to RICO.

The RICO Amendment to the PSLRA is "worded broadly" and "bars a plaintiff from asserting a civil RICO claim premised upon predicate acts of securities fraud . . . even where the plaintiff could not bring a private securities law claim against the same defendant." *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 278, 280 (2d Cir. 2011). It is, of course, wholly irrelevant how the plaintiff frames, or how artfully he pleads, his legal theories. Where, as here, the factual allegations supporting the proposed RICO claim sound in securities fraud (see Def.'s Mem. at 30-32), the RICO Amendment bars the RICO claim.

In an attempt to avoid the PSLRA bar to his RICO claims, Knopick argues that even if his RICO claims were premised on securities fraud, the securities at issue are

---

[9] *See, e.g.*, *Lettrich v. J.C. Penney Co., Inc.*, 90 Fed. Appx. 604, 615 (3d Cir. 2004) (upholding denial of class certification where "there might [have been] some common questions of law or fact" but no indication "that such issues would predominate over the individual issues"); *Gaston v. Exelon Corp.*, 247 F.R.D. 75, 88 (E.D. Pa. 2007) ("Even were we to find that some common questions exist, however, it is clear that they do not predominate in this case."); *DiCostanzo v. Chrysler Corp.*, 57 F.R.D. 495, 499 (E.D. Pa. 1972) ("[E]ven if there are some common questions of law and fact under 23(a)(2), these common questions clearly do not predominate over individual questions of law and fact. Accordingly, the 'predominance' requirement of Rule 23(b)(3) is not satisfied.").

[10] Knopick's other arguments regarding superiority, typicality, and ascertainability, while not addressed in this brief at length due to page limitations, are equally without merit.

"extraterritorial" and, thus, not "actionable" under the Supreme Court's decision in *Morrison v. Nat'l Australia Bank, Ltd.*, 561 U.S. 247 (2010). Knopick's argument fails for two reasons.

First, as discussed in more detail in the SLUSA section of this brief, *infra*, a significant number of the securities in Knopick's portfolio are domestic investments, and therefore, not "extraterritorial." Second, even if those securities were extraterritorial, at least two other courts have addressed the same argument raised by Knopick and each of those courts rejected that argument as contrary to the language and purpose of the statute.[11] The result can be no different here. Knopick's proffered approach would be "precisely the opposite of the purpose underlying the RICO Amendment, which sought to completely eliminate the use of securities fraud in RICO actions." *Perkumpulan*, 2014 WL 1047946, at *11, n.10. Allowing Knopick to pursue a RICO claim based on his theory "would create a loophole to expand, rather than restrict, the use of securities claims as predicate acts." *Id.* Knopick's RICO claims should be dismissed in their entirety.

### D. Plaintiff's Response Fails to Resolve RICO's Causation Requirement.

Defendant demonstrated in its opening brief that Knopick does not have standing to pursue RICO claims because (1) the alleged racketeering activity was directed to the United States government – *not* Knopick; and (2) Knopick alleges no facts to suggest any causal link between the alleged predicate acts and the resulting losses in his investment account. Knopick barely addresses these points. Instead, Plaintiff devotes most of his response to a discussion of

---

[11] *See, e.g.*, *Perkumpulan Investor Crisis Ctr. Dressel-WBG v. Wong*, No. C09-1786-JCC, 2014 WL 1047946, at *9 (W.D. Wash. Mar. 14, 2014) ("The thrust of [Plaintiff's] argument is that while Defendants allegedly committed a domestic RICO violation, the predicate acts upon which that claim is based constitute extraterritorial securities fraud—*i.e.*, fraud for which neither [Plaintiff] nor the S.E.C. could obtain relief under the securities laws in light of *Morrison*. Upon review of Plaintiff's argument and additional research, the Court finds this reading of the RICO Amendment and *Morrison* unpersuasive."); *Picard v. Kohn*, 907 F. Supp. 2d 392, 399 (S.D.N.Y. 2012) (rejecting plaintiff's argument that "the Securities Exchange Act, and thus the RICO amendment, does not apply to financial products that . . . did not trade on an American exchange.").

*Bridge v. Phoenix Bond & Indemnity Co.,* 553 U.S. 639 (2008). Knopick's reliance on *Bridge*, however, is misplaced.

Unlike the plaintiffs' theory of causation in *Bridge*, which the *Bridge* court found "straightforward," *id.* at 647-48, Knopick's theory of proximate cause is anything but. Unlike *Bridge*, where the plaintiffs' harm was directly caused by the defendants' fraudulent submission of competing bids, Knopick fails to allege any facts that would support an inference that his investment losses were proximately caused by Defendant's allegedly fraudulent tax scheme.[12] Finally, in contrast to *Bridge,* where no one argued that independent factors could have accounted for the plaintiffs' injuries, Knopick's alleged losses, if any, were clearly subject to other causal factors, the most obvious of which was the global financial crisis in the world-wide financial markets, and not any fanciful RICO predicate acts or conspiracy.

Likewise, Plaintiff's attempt to distinguish *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1 (2010) fails. Indeed, the *Hemi Group* Court's proximate cause analysis is directly applicable here. There, the Court rejected the City's RICO claim because it failed to set forth any facts to support its legal conclusion that Hemi Group's allegedly fraudulent conduct led directly to the City's injuries. *Id.* at 13-14. Knopick implausibly asserts, and only in conclusory fashion, that Defendant's allegedly fraudulent conduct proximately caused damage to his business and property and that of the other class members, *see AC* at ¶ 246, but he alleges no plausible facts to support that conclusion beyond the wholly improbable notion that UBS FS, in concert with AG and SFA, induced Knopick and the class to invest overseas on margin so that "someday" AG might require repayment of *its own money* to pay a fine that was not even

---

[12] Also noticeably different from *Bridge* – where the Court found that the county, which received the same revenue regardless of which bidder prevailed, was unharmed – the alleged racketeering activity in this case directly affected the U.S. government by defrauding the U.S. taxing authorities.

assessed until years later. Indeed, Knopick does not, and cannot, plausibly allege that the amount of margin recovered from him and the class was even material to the amount of the fine ($780 million according to the DPA) eventually paid. This does not amount to a plausible RICO causal link between the alleged predicate acts and the resulting alleged loss in his investment account.

E. **Defendant's SLUSA Motion Is Not Barred By Rule 12(g)(2) and Applies To Plaintiff's Claim for Investment Losses in His SFA Account**

1. **Rule 12(g)(2) Does Not Bar Plaintiff's SLUSA Motion.**

Defendant's SLUSA motion seeks dismissal of Knopick's state law claims because the gist of the class action is recovery of investment losses in connection with the purchase or sale of securities. Those claims, as a class action, can only be brought under the federal securities laws. Plaintiff argues that Defendant cannot raise this argument now under Rule 12(g)(2) because it was not raised in Defendant's initial motion to dismiss the original complaint. Plaintiff is wrong for a number of reasons.

First, Rule 12(g)(2) does not apply to Defendant's SLUSA motion. SLUSA is a statute of preclusion, and as such is jurisdictional. *See Romano v. Kazacos*, 609 F.3d 512, 519-521 (2d Cir. 2010). SLUSA is a statutory bar to a federal court's jurisdiction over state law class actions which arise in connection with the purchase or sale of securities. *See id.* at 520-521. A federal class action for securities losses based only on state law claims must be dismissed. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993 (C.D. Cal. 2002). Subject matter jurisdiction can, of course, be challenged at any time and cannot be waived. *Fountain v. U.S.*, 605 F. Supp. 2d 608, 610 (D. Del. 2009).

Furthermore, the pending motions have been filed in response to a substantially expanded AC, which contains considerably greater detail about the investment nature of the fraud and rendered Defendant's primarily forum-based initial motions moot. Indeed, the Court's

scheduling Order, which was entered after consultation with counsel, did not limit Defendant to the mere renewal of arguments made in previous motions. Finally, the decisions in this District recognize that judicial economy favors a more flexible and discretionary approach to Rule 12(g). *See, e.g.*, *Penn-Mont Benefit Services, Inc. v. Crosswhite*, 2003 WL 203570, at *6 (E.D. Pa. Jan. 29, 2003) (because the defense of failure to state a claim cannot be waived before the occurrence of a trial on the merits, it would have made little sense to put the defendant to the time and expense of filing an answer and a subsequent motion for judgment on the pleadings when the issue could easily be resolved by Rule 12(b)(6) motion).

The cases cited by plaintiff to suggest otherwise are easily distinguishable. The amended complaint in *Schwab*[13] merely added indispensable parties, and did not include any change to the factual allegations of the complaint. *Albany Insurance Company*[14] did not involve an amended complaint at all. The *Gilmore*[15] court found waiver only because the defense (compulsory arbitration) which the parties sought to raise by Rule 12(b)(6) motion had been abandoned by defendant's filing of an answer to the original complaint. And, in *Negron v. School Dist. of Philadelphia*, 994 F. Supp. 2d 663 (E.D. Pa. 2014), because at least one of the plaintiff's claims had already survived the pending motion, the court did not feel that allowing the litigation to proceed harmed judicial economy.

Nothing in the progress of this case to date suggests in any way that, in response to a substantially amended complaint, UBS FS should be limited simply to refiling motions previously presented. In the interest of judicial economy, the court should exercise its discretion to allow defendant's SLUSA motion, as to do otherwise "would only delay the inevitable refiling

---

[13] *GCL, LLC v. Schwab*, No. 11-04593, 2012 WL 4321972 (E.D. Pa. 2014).

[14] *Albany Ins. Co. v. Almacenadadora Somex S.A.*, 5 F.3d 907, 909 (5th Cir. 1993).

[15] *Gilmore v. Shearson/Am. Exp. Inc.*, 811 F.2d 108, 112 (2d Cir. 1987).

of the same arguments at a later time." *Garges v. People's Light & Theater, Co.*, CIV.A. 09-2456, 2012 WL 202828, at *3 (E.D. Pa. Jan. 24, 2012) (citing Wright and Miller, Federal Practice and Procedure, §1388 (3d ed. 2004)).

### 2. Knopick's SFA Account Invested in "Covered Securities."

Despite extensive amendments to his initial complaint, Knopick continues to avoid identifying with any degree of specificity the securities in which he invested, or the causal connection between the alleged misconduct of UBS FS and those investment losses. Nonetheless, it is clear from at least two monthly portfolio compilations provided by Knopick to UBS FS financial adviser Susan Seifert, one in March 2007 and a second in April 2008, that a substantial portion of his investments were "covered securities." A "covered security" is any security traded on a U.S. exchange, any security senior or equal to a security traded on a U.S. exchange, or any security issued by a company (mutual fund) registered under the Investment Company Act of 1940, 15 U.S.C. §78 bb(f). As the Laursen Affidavit, attached hereto as Exhibit 1 indicates, approximately 73% of the securities in Knopick's account as of March 2007 were "covered securities" within the definition of SLUSA, and even as late as August 2008, 51% of the investments in portfolio no. 70.486086_5 and nearly 60% of the investments in portfolio no 70.166850_8 were dedicated to SLUSA "covered securities." SLUSA clearly applies to the claims at issue. As a result, any state law claims set forth in the AC are barred by statute and must be dismissed.[16]

---

[16] Knopick's common law claims are also time-barred. In his brief, Knopick contends that equitable tolling applies because he allegedly "did not know of the facts from which his claim could have been inferred, because, in part he was deceived by Ms. Seifert into believing UBS would 'make [him] whole . . .'" See Pl.'s Mem. at 41-42. This argument is self-defeating. It is obvious from his alleged discussion with Ms. Seifert that Knopick knew he had a claim. If he did not, there would have been nothing for which Ms. Seifert to suggest he be made whole. Furthermore, waiting to receive compensation based on a representation that the defendant will provide it is not an indication of fraudulent concealment. To the contrary, at the very least it is an evidence of inquiry notice of the cause of action, and at worst it is laches. Knopick's claims are time-barred and cannot be saved by equitable tolling.

### F. Plaintiff's Request to File a Second Amended Complaint Should be Denied.

Plaintiff requests, in the alternative, leave to further amend his Amended Complaint. *See* Pl.'s Mem. at 42. Where, as here, a plaintiff requests leave to file an amended complaint, he must file a motion to do so, and he must attach the proposed amended pleading. *Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 252 (3d Cir. 2007) (citation omitted). Here, Knopick failed to do either, and this alone is fatal to his request. *See id.* at 252–53.

Regardless, it is clear that any such amendment would be futile. As demonstrated by Defendant, even if all of the factual allegations set forth by Knopick are taken as true, he has failed to state any right to relief and there is nothing that Knopick could allege to cure the significant deficiencies that exist. For example, there is no set of facts Knopick could allege that would allow his class action allegations to survive Defendant's Motion to Strike. Indeed, Knopick does not even suggest that additional facts exist. Instead, he seeks to "address any perceived deficiencies in the interest of justice." *See* Pl.'s Mem. at 42. Because any further amendment would be futile, the Court should deny Knopick's request for a *third* bite at the apple, and dismiss the Amended Complaint with prejudice.

Respectfully submitted,

*/s/ David C. Franceski, Jr.*
David C. Franceski, Jr. (Pa. Id. No. 32664)
William T. Mandia (Pa. Id. No. 91792)
Isaac A. Hof (Pa. Id. No. 314094)
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
(215) 564-8000
dfranceski@stradley.com
wmandia@stradley.com

ihof@stradley.com

*Attorneys for Defendant,
UBS Financial Services Inc.*

Dated: July 2, 2015